UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X
                                                        :

STEPHANIE CLIFFORD                          :
     A.K.A. STORMY DANIELS; and         :
STORMY ENTERTAINMENT, INC.         :
                                                           :
        Plaintiffs                       :
                                                             :
-v-                                             :      Case No.  22-1259
                                             :
LUCAS JANKLOW; and                  :
JANKLOW PARTNERS, LLC d/b/a      :      Jury Trial Demanded
JANKLOW & NESBIT ASSOCIATES      :
                                             :
        Defendant.                     :
                                           :
--------------------------------------------------------------------X

## COMPLAINT

Plaintiffs STEPHANIE CLIFFORD a.k.a. "Stormy Daniels" and STORMY ENTERTAINMENT, INC., a California domestic corporation, ("Plaintiffs" or "Daniels"), by and through their attorneys, brings this action against Defendants LUCAS JANKLOW and JANKLOW PARTNERS, L.L.C. d/b/a JANKLOW & NESBIT ASSOCIATES, and alleges as follows:

## NATURE OF THE ACTION

1.    Plaintiff brings this action against Defendants LUCAS JANKLOW and JANKLOW & NESBIT ASSOCIATES for recovery of money damages arising from the Defendants' breach of contract and breach of fiduciary duty in the failure to make payment to the Plaintiff of $175,000.00 per the terms of the contract between the parties and the fiduciary relationship between Agent and Principal.

## THE PARTIES

2.      STEPHANIE CLIFFORD, a.k.a. "Stormy Daniels" is a resident of New Orleans, and a citizen in the State of Louisiana.

3.      STORMY ENTERTAINMENT, INC. is a California corporation — and a citizen of the State of California — owned by Plaintiff Stephanie Clifford in North Hollywood, California. Stephanie Clifford is president of STORMY ENTERTAINMENT, INC.

4.      LUCAS JANKLOW is a resident of Manhattan, and a citizen of the State of New York, and engaged as a literary agent for and on behalf of Plaintiff. LUCAS JANKLOW is President and Managing Director of JANKLOW & NESBIT ASSOCIATES.

5.      JANKLOW PARTNERS, L.L.C. d/b/a JANKLOW & NESBIT ASSOCIATES ("JANKLOW & NESBIT") is a literary agency and domestic limited liability company in New York, New York. Its principal place of business is at 285 Madison Ave., 21st Floor, New York, N.Y. JANKLOW PARTNERS, L.L.C. is a registered domestic L.L.C. within the State of New York. Upon information and belief, JANKLOW PARTNERS, L.L.C. conducts business under its d/b/a JANKLOW & NESBIT ASSOCIATES.   JANKLOW & NESBIT is authorized to conduct business in the State of New York and was situated and conducting business in the State of New York, County of New York during the events described below in this Complaint.   Upon information and belief, no members of JANKLOW PARTNERS, L.L.C. are citizens of Louisiana or California.

6.      During the events framed in this Complaint, LUCAS JANKLOW and JANKLOW & NESBIT ASSOCIATES acted as literary agents for and on behalf of Plaintiff.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332. There is complete diversity among the parties, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

8.      This Court has jurisdiction over LUCAS JANKLOW because he is a resident of the State of New York. Defendant JANKLOW PARTNERS, L.L.C. d/b/a JANKLOW & NESBIT ASSOCIATES, maintains its principal place of business within New York County.

9.      This Court has jurisdiction over each Defendant named herein because each Defendant is either a domestic limited liability company that conducts business in and maintains operations in the State of New York or is an individual who is a resident and has sufficient minimum contacts with the State of New York so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because one or more of the defendants either resides in or maintains executive offices in this judicial district, a substantial portion of the transactions and wrongs complained of herein, including defendants' primary participation in the wrongful acts detailed herein and aiding in violation of fiduciary duties owed to Plaintiff occurred in this judicial district.

## FACTS

11.     JANKLOW & NESBIT represented to the world and Plaintiff that they are a premier literary agency dedicated to the interests of their writer clients in all aspects of their careers. They offer the care and personal attention of a boutique agency and the strength and expertise of a large firm. JANKLOW & NESBIT'S approach has always been client advocacy combined with meticulous attention to detail. JANKLOW & NESBIT warrant that they employ a

highly respected legal team to ensure pristine contracts. Further, their accounting and royalty's department assures timely and accurate receipt of payments to their clients, including Plaintiff herein, Stephanie Clifford, a.k.a. Stormy Daniels.

12.     On April 13, 2018, the parties signed a JANKLOW & NESBIT *Retainer Agreement* setting forth the terms of the commission or fee for services as Plaintiff's literary agent.

13.     The Defendants agreed "to be [Plaintiff's] sole and exclusive representative and agent to negotiate for the disposition, throughout the world, of any and all rights, as hereinafter defined, the next literary property you propose to write, a currently untitled work of nonfiction about the story of Stephanie Clifford, a literary work to be written by Ms. Clifford and a professional writer to be approved by Ms. Clifford."

14.     Plaintiff engaged Defendants to provide advice and counsel in the negotiation of the *Author's Contract* with St. Martin's Press and relied upon their expertise as the premier literary agency dedicated to the interests of their writer clients.

15.     In return for the services provided by JANKLOW & NESBIT, Plaintiff agreed to compensation to the Defendants in the amount of 15% of the gross domestic proceeds and 20% of the gross foreign proceeds received by her for literary work.

16.     Further, Plaintiff reposed trust and confidence in Defendants by agreeing all funds from the *Author's Contract* with St. Martin's Press would be initially sent to them, after which the Defendants would promptly remit to Plaintiff the balance of the Gross Proceeds less the Defendants' agreed on compensation.

17.     In the spring of 2018, LUCAS JANKLOW and JANKLOW & NESBIT ASSOCIATES negotiated a book deal with St. Martin's Press on behalf of Plaintiff.

18.     On April 11, 2018, Plaintiff executed an *"Author Contract"* with St. Martin's Press. The contract identifies LUCAS JANKLOW and JANKLOW & NESBIT ASSOCIATES as literary agents for the "Author" - Stephanie Clifford, Plaintiff herein and represented her in securing a book deal with the publisher, St. Martin's Press.

19.     As reflected in the *Author Contract,* LUCAS JANKLOW and JANKLOW & NESBIT ASSOCIATES earned income or fees by taking a percentage of the money generated by the book, in this case, Stormy Daniels' memoir "Full Disclosure."

20.     Pursuant to the *Author Contract*, Plaintiff would receive an $800,000.00 advance to be paid by the publisher, St. Martin's Press, in four installments.

21.     Under the terms of the *Retainer Agreement,* the Defendants "shall be promptly [remitted] to you [Plaintiff] the balance of the Gross Proceeds."

22.     Each payment was directed to the author's agent, LUCAS JANKLOW, at JANKLOW & NESBIT ASSOCIATES in New York. Upon receipt by Janklow, the agent would forward the payment to Plaintiff less the agreed-upon fee. In the words of Lucas Janklow, the publisher pays his company directly, and "we pass it through to the author."

23.     The Defendants received each of the four installments of the $800,000 advance. Per the terms of the *Retainer Agreement,* Defendants took their agreed-upon commissions of 15% out of each payment as it was received from the publisher.[1]

---

[1] Unknown to Plaintiff until recently, the Defendants paid Michael Avenatti 2.5% of the $800,000 advance, further reducing the Defendants' compensation to 12.5%. Defendants did not inform Plaintiff of this oral agreement which was made without the knowledge or approval of Plaintiff.

*The First Payment*

24.     The First Payment of $250,000 was to be paid to LUCAS JANKLOW and JANKLOW & NESBIT ASSOCIATES upon signing the contract by Plaintiff. As agreed, St. Martin's Press sent the first payment of approximately $250,000 to the Defendants.

25.     On April 11, 2018, Defendants transferred to a bank account designated by Plaintiff a payment of approximately $212,500 representing the $250,000 payment less Defendants' literary agency fee.

*The Second Payment*

26.     The Second Payment of $175,000 would be paid upon Plaintiff's delivery and publisher's acceptance of the final manuscript of the book. As agreed, St. Martin's Press sent the second payment of approximately $175,000 to the Defendants.

27.     In breach of the terms of the *Retainer Agreement,* the Defendants failed to "promptly remit to [Plaintiff] the balance of the Gross Proceeds" from the Second Payment.

28.     On August 1st and 3rd of 2018, Defendants, without authorization or knowledge by Plaintiff and in violation of their fiduciary duty to Plaintiff, wired $125,000 and $23,750 respectively to the account of Michael Avenatti,[2] representing the second payment by St. Martin's Press of $175,000 less Defendants' literary agency fee.

29.     Upon information and belief, it is not a regular practice for payments to be directed to an account of a third-party such as Michael Avenatti. The Defendants' usual practice was to pay only the signatory on the *Retainer Agreement,* in this case, Plaintiff. This practice is done out of concern that the money may not reach their client cleanly and without incident.

_____

[2] Michael Avenatti, formerly an attorney licensed with the State of California, represented the Plaintiff from February of 2018 until February of 2019.

30.     In breach of the terms of the *Retainer Agreement* and their fiduciary obligation to Plaintiff, Defendants departed from this practice. They transferred the money to a third-party account controlled by Michael Avenatti.

31.     Contrary to Defendant's contractual and fiduciary duties, Defendant LUCAS JANKLOW has stated that he transferred the funds to Avenatti as he was "trying to help Michael out."

32.     Despite numerous inquiries by Plaintiff, Defendants never spoke with Plaintiff about transferring her monies from the Second Payment to Michael Avenatti, thus breaching their fiduciary obligation to make truthful and complete disclosures.

33.     On August 9, 2018, Plaintiff inquired of LUCAS JANKLOW about the missing payment. Despite Defendants'' contractual and fiduciary duties, LUCAS JANKLOW never responded to her inquiry.

34.     On September 5, 2018, Plaintiff received monies from Michael Avenatti in an amount equal to the amount due to Plaintiff for the Second payment from the Defendants. Avenatti told the Plaintiff that he had received the check from the publisher – St. Martin's Press.

*The Third Payment*

35.     The Third Payment of $175,000 would be paid upon the publication of Stormy Daniel's book entitled "Full Disclosure" in no more than six months after delivery and acceptance of the final manuscript. As agreed, St. Martin's Press sent the Third Payment of approximately $175,000 to the Defendants.

36.     In breach of the terms of the *Retainer Agreement,* the Defendants failed to "promptly remit to [Plaintiff] the balance of the Gross Proceeds" from the Third Payment.

37.     On September 15, 2018, Plaintiff again requested to speak with LUCAS JANKLOW in a text message. After the text and despite Defendants' contractual and fiduciary duties, LUCAS JANKLOW refused to speak with Plaintiff about the Third Payment and make the required truthful and complete disclosures.

38.     On September 17, 2018, Defendants, without authorization or knowledge by Plaintiff and in violation of their fiduciary duty to Plaintiff, transferred $148,750 to the account of Michael Avenatti, representing the third payment by St. Martin's Press of $175,000 less the Defendants' literary agency fee.

39.     Defendants never spoke with Plaintiff about transferring her monies from the Third Payment to Michael Avenatti.

40.     On November 19, 2018, Defendants were informed that Plaintiff did not receive her Third Payment in an email from Plaintiff's publicist stating:

> [Storm] asked me to follow up about the third payment, which she says was due a few weeks ago upon completion of three weeks of press tour for the book. When can I tell her to expect the payment?

41.     The Defendants did not respond to the November 19, 2018 inquiry or communicate with Plaintiff about the missing payment. Defendants failed to make the required truthful and complete disclosure to Plaintiff that they had sent her monies to Michael Avenatti in breach of the *Retainer Agreement* and the trust and confidence placed in them by Plaintiff.

42.     On November 20, 2018, Defendants were again informed that Plaintiff did not receive her Third Payment in an email from Plaintiff's publicist stating:

> Following up on this, Stormy believes you are several weeks late on a payment, which makes her disinclined to promote a book she feels she isn't getting paid for. If you can give me an update on that, it would be most appreciated and help me in presenting the opportunities to continue promoting the book to Stormy.

8

43.     The Defendants did not respond to the November 20, 2018 inquiry or communicate with Plaintiff about the missing payment. Defendants failed to make the required truthful and complete disclosure to Plaintiff that they had sent her monies to Michael Avenatti in breach of the *Retainer Agreement* and the trust and confidence placed in them by Plaintiff.

44.     On December 17, 2018, Defendants were again informed that Plaintiff did not receive her Third Payment in an email from Plaintiff's publicist stating:

> Hi, folks. Stormy believes St. Martin's owes her the third payment due on her advance and asked if someone on your end -- her agent Luke or someone at St. Martin's -- would please get in touch with me or her directly at stormydaniels@aol.com with an update on the status of the matter. She also asked if she could see any sales figures that you have, and if you could please send those directly as well or arrange for a phone call with her in the event the information is confidential. Thanks and happy holidays.

45.     The Defendants did not respond to the December 17, 2018 inquiry or communicate with Plaintiff about the missing payment. Defendants failed to make the required truthful and complete disclosure to Plaintiff that they had sent her monies to Michael Avenatti in breach of the *Retainer Agreement* and the trust and confidence placed in them by Plaintiff.

*The Fourth Payment*

46.     The Fourth Payment of $200,000 would be paid six months after the publication of Stormy Daniel's book entitled "Full Disclosure" or on completion of certain publicity requirements and in no more than twelve months after delivery and acceptance of the final manuscript provided certain publicity requirements were met.

47.     On February 14, 2019, Defendants received the final and Fourth Payment on the agreed advance from St. Martin's Press.

48.     On February 15, 2019, Plaintiff contacted LUCAS JANKLOW several times directly, leaving both a voicemail and a text message asking Defendants to "Please call [her]." LUCAS JANKLOW, Plaintiff's literary agent, refused to take or return her calls on that day.

49.     Despite recognizing that he had legal obligations to Plaintiff, LUCAS JANKLOW insisted on a practice he describes a "blanking" a signed client. An approach he describes as "being unresponsive, out of communication."   Certainly, such practices run afoul of the fiduciary obligations to make truthful and complete disclosure to Plaintiff.

50.     February 16, 2019, Plaintiff called LUCAS JANKLOW at 2:30 pm. He again refused to take calls or respond to any of her messages throughout the day until approximately 7:00 pm that evening. At that time, the parties, for the first time, spoke about the monies due under the contracts. Plaintiff told LUCAS JANKLOW that she did not receive the Third payment. LUCAS JANKLOW did not make truthful and complete disclosure to Plaintiff that they had sent her monies to Michael Avenatti in breach of the *Retainer Agreement* and the trust and confidence placed in the Defendants by Plaintiff.

51.     On February 19, 2019[3], Plaintiff was finally informed that Defendants had redirected the Second and Third payments due under the agreement with St. Martin's Press to Michael Avenatti without her knowledge or authorization.

52.     Upon discovering the unauthorized transfers of the Second and Third payments to Michael Avenatti, Plaintiff directed the Defendants to transfer the fourth payment to an account controlled by her in accordance with the *Retainer Agreement.* A document confirmed this authorization with her signature and verbal confirmation from Plaintiff.

---

[3] February 19, 2019, is also when Plaintiff terminated her attorney-client relationship with Michael Avenatti.

53.     On or about February 21, 2019, Defendants sent by wire to a bank account designated by Plaintiff a payment of approximately $212,500 representing the $250,000 payment less the Defendants' literary agency fee.

54.     In accordance with the terms of the *Retainer Agreement,* Plaintiff received the Fourth payment from St. Martin's Press.

55.     To date, LUCAS JANKLOW and JANKLOW & NESBIT ASSOCIATES have not paid Plaintiff any monies due from the Third payment by St. Martin's Press received by Defendants who wrongfully and without authorization by Plaintiff directed the monies to Michael Avenatti in breach of the *Retainer Agreement* and the trust and confidence placed in them by Plaintiff.

## **FIRST CLAIM FOR RELIEF**
### **Breach of Contract**

56.     Plaintiffs incorporate herein by reference paragraphs 1-55 above.

57.     Plaintiff and Defendants executed a *Retainer Agreement* wherein, in exchange for services as a literary agent, the Defendants would receive a portion of her advances on the publication of her book. Under the terms of the *Retainer Agreement,* the Defendants would promptly remit to Plaintiff the balance of the Gross Proceeds.

58.     As outlined in more detail above, Defendants breached the contract by failing to promptly remit to Plaintiff the balance of the Gross Proceeds to her and instead redirected the amounts to a third-party, Michael Avenatti, without her knowledge or consent; and

59.     Plaintiff suffered damages as a direct result of the breach for the failure to make the necessary and required payments.

11

## SECOND CLAIM FOR RELIEF
**Breach of Fiduciary Duty**

60.     Plaintiffs incorporate herein by reference paragraphs 1-59 above.

61.     Plaintiffs engaged Defendants to provide advice and counsel in the negotiation of the *Author's Contract* with St. Martin's Press and relied upon their expertise as the premier literary agency dedicated to the interests of their writer clients.

62.     Further, and as outlined above, Plaintiffs reposed trust and confidence in Defendants in agreeing that all funds from the *Author's Contract* with St. Martin's Press would be initially sent to them whereupon the Defendants would promptly remit to Plaintiff the balance of the Gross Proceeds.

63.     As outlined above, a fiduciary relationship existed between Plaintiff and Defendants that created a fiduciary duty that Defendants make proper account of all monies received by them for her literary efforts and remit the monies to her without interference, delay or delivery to third parties and strangers to the contractual agreements.

64.     Defendants failed to remit the monies directly to Plaintiff, and when Plaintiff inquired about the failure to forward payments to her, responded with silence and refused to speak with the principal who had placed trust and confidence in them.

65.     As outlined above, Defendants LUCAS JANKLOW and JANKLOW PARTNERS, L.L.C. d/b/a JANKLOW & NESBIT ASSOCIATES, breached the fiduciary duties to Plaintiff; and was the direct cause of damages to Plaintiff as she has never received all of the monies due and owed under the terms of the *Author's Contract* with St. Martin's Press and required by the *Retainer Agreement* between the parties.

66.     As a direct and proximate result of the acts and omissions of LUCAS JANKLOW and JANKLOW PARTNERS, L.L.C. d/b/a JANKLOW & NESBIT ASSOCIATES, Plaintiff is

entitled to damages in the form of economic loss and emotional distress all in excess of Seventy-five Thousand and No/100 Dollars ($75,000.00). Plaintiffs further seek an award of punitive or exemplary damages against LUCAS JANKLOW and JANKLOW PARTNERS, L.L.C. d/b/a JANKLOW & NESBIT ASSOCIATES.

### THIRD CLAIM FOR RELIEF
**Fraudulent Concealment**

67.     Plaintiffs incorporate herein by reference paragraphs 1-66 above.

68.     Based upon the facts alleged above, a fiduciary relationship existed between Plaintiffs and Defendants.

69.     A fiduciary relationship imposes a duty upon Defendants to disclose material information and that the Defendants failed to do so.

70.     The fiduciary relationship required the Defendants to make truthful and complete disclosures to Plaintiffs.

71.     The facts, as alleged above, set forth numerous occasions when Plaintiffs reached out to the Defendants and requested communication concerning the failure to make the Second and Third payments. Defendants ignored Plaintiffs' request and concealed that they were redirecting her monies to Michael Avenatti without her knowledge or consent in violation of the Retainer Agreement and their fiduciary duties.

72.     In their dealings with Plaintiffs, Defendants consciously chose a self-described course of action of a "blanking" Plaintiff. An approach described by the Defendants as "being unresponsive, out of communication."  Such practices violate the most fundamental obligation between agent and principal: open communication and complete and truthful disclosure of material facts.

73.     These actions by the Defendants constitute fraudulent concealment by Defendants of their wrongful acts in an attempt to delay and hinder Plaintiffs' discovery of Defendants failure to promptly remit to Plaintiff the balance of the Gross Proceeds to her and instead redirected the amounts to a third-party, Michael Avenatti, without her knowledge or consent.

74.     As a direct and proximate result of the acts and omissions of LUCAS JANKLOW and JANKLOW PARTNERS, L.L.C. d/b/a JANKLOW & NESBIT ASSOCIATES, Plaintiff is entitled to damages in the form of economic loss and emotional distress all in excess of Seventy-five Thousand and No/100 Dollars ($75,000.00). Plaintiffs further seek an award of punitive or exemplary damages against LUCAS JANKLOW and JANKLOW PARTNERS, L.L.C. d/b/a JANKLOW & NESBIT ASSOCIATES.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiffs STEPHANIE CLIFFORD a.k.a. "Stormy Daniels" and STORMY ENTERTAINMENT, INC., seek judgment against Defendants, LUCAS JANKLOW and JANKLOW PARTNERS, L.L.C. d/b/a JANKLOW & NESBIT ASSOCIATES as follows:

a.     For their First Claim for Relief set forth above, Plaintiffs seek judgment against Defendants for breach of contract for $175,000.00.

b.     For their Second Claim for Relief set forth above, Plaintiffs seek judgment against the Defendants for damages for breach of fiduciary duty in the form of economic loss and emotional distress all in excess of Seventy-five Thousand and No/100 Dollars ($75,000.00). Plaintiffs further seek an award of punitive or exemplary damages against LUCAS JANKLOW and JANKLOW PARTNERS, L.L.C. d/b/a JANKLOW & NESBIT ASSOCIATES in excess of Seventy-five Thousand and No/100 Dollars ($75,000.00) to deter said Defendants from betraying

14

the trust and confidence of their principals, like Plaintiffs herein, in the future and to apprise the public at large that society does not condone such actions or omissions to act.

      c.     For their Third Claim for Relief set forth above, Plaintiffs seek judgment against the Defendants for damages for fraudulent concealment of material facts in the form of economic loss and emotional distress all in excess of Seventy-five Thousand and No/100 Dollars ($75,000.00). Plaintiffs further seek an award of punitive or exemplary damages against LUCAS JANKLOW and JANKLOW PARTNERS, L.L.C. d/b/a JANKLOW & NESBIT ASSOCIATES in excess of Seventy-five Thousand and No/100 Dollars ($75,000.00) to deter said Defendants from betraying the trust and confidence of their principals, like Plaintiffs herein, in the future and to apprise the public at large that society does not condone such actions or omissions to act.

      d.     For the costs of this action, interest as provided by law, and for all other and further relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: February 15, 2022

                                 Respectfully submitted,

                                 Michael F. Kuzow,
                                 WESTERMANN SHEEHY SAMAAN
                                 & GILLESPIE, LLP
                                 90 Merrick Ave., Ste. 802
                                 East Meadow, NY 11554
                                 Phone: 516-794-7500
                                 Fax: 516-794-1277

                                 And

15

Clark O. Brewster, OBA # 1114
Guy A. Fortney, OBA # 17027
***Pro Hac Vice applied for and pending***
BREWSTER & DEANGELIS, PLLC
2617 East 21st Street
Tulsa, OK  74114
CBrewster@brewsterlaw.com
gfortney@brewsterlaw.com
Phone: (918) 742-2021
Fax:     (918) 742-2197
*Counsel for Plaintiffs*