UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

STEPHANIE CLIFFORD
    A.K.A. STORMY DANIELS; and
STORMY ENTERTAINMENT, INC.

        **Plaintiffs**

-v-                                        Case No. 1:22-CV-01259-MKV

LUCAS JANKLOW; and
JANKLOW PARTNERS, LLC d/b/a        Jury Trial Demanded
JANKLOW & NESBIT ASSOCIATES

        **Defendant.**

-----------------------------------------------------------X

## AMENDED COMPLAINT

Plaintiffs STEPHANIE CLIFFORD a.k.a. "Stormy Daniels" and STORMY ENTERTAINMENT, INC., a California domestic corporation, by and through their attorneys, brings this action against Defendants LUCAS JANKLOW and JANKLOW PARTNERS, L.L.C. d/b/a JANKLOW & NESBIT ASSOCIATES, and alleges as follows:

## NATURE OF THE ACTION

1. Plaintiffs bring this action against Defendants LUCAS JANKLOW and JANKLOW & NESBIT ASSOCIATES for recovery of money damages arising from the JANKLOW & NESBIT's breach of contract for the failure to make payment to STORMY ENTERTAINMENT, INC., of $175,000.00 per the terms of the contract between the parties and LUCAS JANKLOW's breach of fiduciary duty for the diversion of the $175,000.00 payment and failure to disclose that he had caused the funds to be diverted to a third-party, Michael Avenatti.

2.

1

## THE PARTIES

3. STEPHANIE CLIFFORD, a.k.a. "Stormy Daniels," is a resident of New Orleans and a citizen of the State of Louisiana.

4. STORMY ENTERTAINMENT, INC. is a California corporation — and a citizen of the State of California — owned by Plaintiff STEPHANIE CLIFFORD, with its principal place of business in North Hollywood, California. STEPHANIE CLIFFORD is president of STORMY ENTERTAINMENT, INC.

5. LUCAS JANKLOW is a resident of Manhattan, a citizen of the State of New York, and engaged as a literary agent for and on behalf of STEPHANIE CLIFFORD. LUCAS JANKLOW is President and Managing Director of JANKLOW & NESBIT ASSOCIATES.

6. JANKLOW PARTNERS, L.L.C. d/b/a JANKLOW & NESBIT ASSOCIATES ("JANKLOW & NESBIT") is a literary agency and domestic limited liability company with its principal place of business at 285 Madison Ave., 21st Floor, New York, New York. JANKLOW PARTNERS, L.L.C. is a registered domestic L.L.C. within the State of New York. Upon information and belief, JANKLOW PARTNERS, L.L.C. conducts business under its d/b/a JANKLOW & NESBIT ASSOCIATES. JANKLOW & NESBIT is authorized to conduct business in the State of New York and was situated and conducting business in the State of New York, County of New York during the events described in this Complaint. Upon information and belief, no members of JANKLOW PARTNERS, L.L.C. are citizens of Louisiana or California.

7. During the events framed in this Complaint, LUCAS JANKLOW and JANKLOW & NESBIT ASSOCIATES acted as literary agents for and on behalf of the Plaintiffs.

## JURISDICTION AND VENUE

8. This Court has jurisdiction pursuant to 28 U.S.C. § 1332. There is complete diversity among the parties, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

9. This Court has jurisdiction over LUCAS JANKLOW because he is a resident of the State of New York. Defendant JANKLOW PARTNERS, L.L.C. d/b/a JANKLOW & NESBIT ASSOCIATES, maintains its principal place of business within New York County.

10. This Court has jurisdiction over each Defendant named herein because each Defendant is a limited liability company that conducts business in and maintains operations in this District or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

11. Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because one or more of the defendants either resides in or maintains executive offices in this District, a substantial portion of the transactions and wrongs complained of herein, including defendants' primary participation in the wrongful acts detailed herein and aiding in violation of fiduciary duties owed to Plaintiff occurred in this District and Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that have an effect in this District.

## FACTS

12. JANKLOW & NESBIT represented to the world and Plaintiffs that they are a premier literary agency dedicated to the interests of their writer clients in all aspects of their careers. They offer the care and personal attention of a boutique agency and the strength and

expertise of a large firm. JANKLOW & NESBIT'S approach has always been client advocacy combined with meticulous attention to detail. JANKLOW & NESBIT warrant that they employ a highly respected legal team to ensure pristine contracts. Further, their accounting and royalty department assures timely and accurate receipt of payments to their clients, including Plaintiffs, STEPHANIE CLIFFORD, a.k.a. Stormy Daniels, and STORMY ENTERTAINMENT, INC.

13. On April 13, 2018, STEPHANIE CLIFFORD, President of STORMY ENTERTAINMENT, INC., and LUCAS JANKLOW, individual, executed a JANKLOW & NESBIT *Retainer Agreement*.

14. LUCAS JANKLOW and JANKLOW & NESBIT agreed "to be [Plaintiff's] sole and exclusive representative and agent to negotiate for the disposition, throughout the world, of any and all rights, as hereinafter defined, the next literary property you propose to write, a currently untitled work of nonfiction about the story of Stephanie Clifford, (the "Literary Work") to be written by Ms. Clifford and a professional writer to be approved by Ms. Clifford."

15. The *Retainer Agreement* further specified that "[i]n every contract governing any and all Rights to the Literary Work, we shall be <u>designated as your agent</u> and as the recipient and payee of all Gross Proceeds . . ."

16. MS. CLIFFORD and STORMY ENTERTAINMENT, INC. engaged both MR. JANKLOW and JANKLOW & NESBIT to provide advice and counsel in the negotiation of the *Author Contract* with St. Martin's Press and relied upon their expertise as the premier literary agency dedicated to the interests of their writer clients, including MS. CLIFFORD.

17. In return for the services provided by MR. JANKLOW and JANKLOW & NESBIT, STORMY ENTERTAINMENT, INC. agreed on compensation to JANKLOW & NESBIT in the amount of 15% of the gross domestic proceeds and 20% of the gross foreign

proceeds received for the literary work. Under the terms of the *Retainer Agreement,* JANKLOW & NESBIT shall promptly remit the balance of the Gross Proceeds received to [STORMY ENTERTAINMENT, INC.].

18.    In the spring of 2018, MR. JANKLOW and JANKLOW & NESBIT negotiated a book deal with St. Martin's Press on behalf of MS. CLIFFORD, Plaintiff.

19.    On April 11, 2018, MS. CLIFFORD executed an *"Author Contract"* with St. Martin's Press. The contract between MS. CLIFFORD and St. Martin's Press identifies LUCAS JANKLOW and JANKLOW & NESBIT ASSOCIATES as literary agents for the "Author" - Stephanie Clifford.

20.    The *Author Contract* negotiated by MR. JANKLOW and JANKLOW & NESBIT for MS. CLIFFORD states that the "Agent [LUCAS JANKLOW] is hereby fully authorized and empowered to act on behalf of the Author [CLIFFORD] in all matters in any way arising out of this agreement."

21.    Further, MS. CLIFFORD reposed trust and confidence in MR. JANKLOW and JANKLOW & NESBIT by agreeing that all funds from the *Author Contract* with St. Martin's Press would be initially sent to MR. JANKLOW at JANKLOW & NESBIT, after which JANKLOW & NESBIT would promptly remit the balance of the Gross Proceeds less the agreed compensation.

22.    Pursuant to the *Author Contract*, MS. CLIFFORD would receive an $800,000.00 advance to be paid by the publisher, St. Martin's Press, in four installments. All amounts payable to the Author "shall be made payable in the name of and sent to the Author's agent, JANKLOW & NESBIT Associates, . . . attn: LUKE JANKLOW."

23. Upon information and belief, MR. JANKLOW received each of the four installments of the $800,000 advance. Per the terms of the *Retainer Agreement,* JANKLOW & NESBIT ASSOCIATES took the agreed-upon commissions of 15% out of each payment as it was received from the publisher.[1]

*The First Payment*

24. The First Payment of $250,000 was to be paid upon signing the contract by MS. CLIFFORD. As agreed, St. Martin's Press sent the first payment of approximately $250,000 to the Author's agents, JANKLOW & NESBIT and MR. JANKLOW.

25. On April 11, 2018, JANKLOW & NESBIT transferred to a bank account designated by MS. CLIFFORD a payment of approximately $212,500, representing the $250,000 payment less JANKLOW & NESBIT'S literary agency fee.

*The Second Payment*

26. The Second Payment of $175,000 would be paid upon Plaintiff's delivery and publisher's acceptance of the final manuscript of the book. As agreed, St. Martin's Press sent the second payment of approximately $175,000 to the Author's agents, JANKLOW & NESBIT and MR. JANKLOW.

27. In breach of the terms of the *Retainer Agreement,* JANKLOW & NESBIT failed to "promptly remit to [Plaintiff] the balance of the Gross Proceeds" from the Second Payment.

28. On August 1st and 3rd of 2018, MR. JANKLOW, without authorization or knowledge by MS. CLIFFORD, in violation of his fiduciary duty to MS. CLIFFORD diverted the

---

[1] Unknown to Plaintiff until recently, the Defendants paid Michael Avenatti 2.5% of the $800,000 advance, further reducing the Defendants' compensation to 12.5%. Defendants did not inform Plaintiff of this oral agreement which was made without the knowledge or approval of Plaintiff.

funds intended for MS. CLIFFORD and wired $125,000 and $23,750, respectively, to the account of Michael Avenatti,[2] representing the second payment by St. Martin's Press of $175,000 less the JANKLOW & NESBIT literary agency fee.

29. Upon information and belief, it is not a regular practice for payments to be directed to an account of a third-party such as Michael Avenatti. MR. JANKLOW, in sworn testimony, stated that the usual practice was to pay only the signatory on the *Retainer Agreement*. He further testified that this practice is done out of concern that the money may not reach their client cleanly and without incident.

30. In breach of the terms of the *Retainer Agreement,* JANKLOW & NESBIT departed from this practice at the direction of MR. JANKLOW by diverting the monies to a third-party account controlled by Michael Avenatti.

31. MR. JANKLOW diverted the funds to Avenatti, stating under oath that he was "trying to help Michael out" stating "This is normally not even entertained. I'm doing my best to take care of you. Cool." The person MR. JANKLOW was "doing [his] best to take care of" was Michael Avenatti not MS. CLIFFORD, his client. In intentionally diverting the funds, MR. JANKLOW was disregarding and breaching his fiduciary duties to MS. CLIFFORD.

32. Despite numerous inquiries by MS. CLIFFORD, MR. JANKLOW refused to speak with her about transferring her monies from the Second Payment to Michael Avenatti, thus breaching his fiduciary obligation to make truthful and complete disclosures.

33. On August 9, 2018, MS. CLIFFORD inquired of MR. JANKLOW about the missing payment. MR. JANKLOW never responded to her inquiry.

---

[2] Michael Avenatti, formerly an attorney licensed with the State of California, represented the Plaintiff from February of 2018 until February of 2019.

7

34. On September 5, 2018, MS. CLIFFORD received monies from Michael Avenatti in an amount equal to the amount due to MS. CLIFFORD for the Second payment from the Defendants. Avenatti told the MS. CLIFFORD that he had received the check from the publisher – St. Martin's press.

*The Third Payment*

35. The Third Payment of $175,000 would be paid upon the publication of MS. CLIFFORD'S book entitled "Full Disclosure" in no more than six months after delivery and acceptance of the final manuscript. As agreed, St. Martin's Press sent the Third Payment of approximately $175,000 to the Author's agents, JANKLOW & NESBIT and MR. JANKLOW.

36. In breach of the terms of the *Retainer Agreement,* JANKLOW & NESBIT failed to "promptly remit to [Plaintiff] the balance of the Gross Proceeds" from the Third Payment.

37. On September 15, 2018, MS. CLIFFORD again requested to speak with MR. JANKLOW in a text message. After the text and despite his fiduciary duties, MR. JANKLOW refused to speak with MS. CLIFFORD about the Third Payment and make the required truthful and complete disclosures.

38. On September 17, 2018, MR. JANKLOW, without authorization or knowledge by MS. CLIFFORD, in violation of his fiduciary duty to MS. CLIFFORD diverted the funds intended for MS. CLIFFORD and wired $148,750 to the account of Michael Avenatti, representing the third payment by St. Martin's Press of $175,000 less the JANKLOW & NESBIT literary agency fee.

39. MR. JANKLOW refused to speak with MS. CLIFFORD about diverting her monies from the Third Payment to Michael Avenatti.

40. On November 19, 2018, MR. JANKLOW was informed that MS. CLIFFORD did not receive her Third Payment in an email from MS. CLIFFORD'S publicist stating:

> [Stormy] asked me to follow up about the third payment, which she says was due a few weeks ago upon completion of three weeks of press tour for the book. When can I tell her to expect the payment?

41. MR. JANKLOW did not respond to the November 19, 2018, inquiry or communicate with MS. CLIFFORD about the missing payment. MR. JANKLOW failed to make the required truthful and complete disclosure to MS. CLIFFORD that he had diverted her monies to Michael Avenatti.

42. On November 20, 2018, MR. JANKLOW was again informed that MS. CLIFFORD did not receive the Third Payment in an email from MS. CLIFFORD'S publicist stating:

> Following up on this, Stormy believes you are several weeks late on a payment, which makes her disinclined to promote a book she feels she isn't getting paid for. If you can give me an update on that, it would be most appreciated and help me in presenting the opportunities to continue promoting the book to Stormy.

43. MR. JANKLOW refused to respond to the November 20, 2018, inquiry or communicate with MS. CLIFFORD about the missing payment. MR. JANKLOW failed to make the required truthful and complete disclosure to MS. CLIFFORD that they had diverted her monies to Michael Avenatti in breach of the *Retainer Agreement* and the trust and confidence placed in them by MS. CLIFFORD.

44. On December 17, 2018, MR. JANKLOW was again informed that MS. CLIFFORD did not receive her Third Payment in an email from MS. CLIFFORD'S publicist stating:

> Hi, folks. Stormy believes St. Martin's owes her the third payment due on her advance and asked if someone on your end -- her agent Luke or someone at St. Martin's -- would please get in touch with me or her directly at stormydaniels@aol.com with an update on the status of the matter. She also asked if she could see any sales figures that you have, and if you could please send those directly as well or arrange for a phone call with her in the event the information is confidential. Thanks and happy holidays.

45. MR. JANKLOW again refused to respond to the December 17, 2018, inquiry or communicate with MS. CLIFFORD about the missing payment. MR. JANKLOW failed to make the required truthful and complete disclosure to MS. CLIFFORD that he had diverted her monies to Michael Avenatti in breach of the trust and confidence placed in him by MS. CLIFFORD.

*The Fourth Payment*

46. The Fourth Payment of $200,000 would be paid six months after the publication of MS. CLIFFORD's book entitled "Full Disclosure" or on completion of specific publicity requirements and in no more than twelve months after delivery and acceptance of the final manuscript provided specific publicity requirements were met.

47. On February 14, 2019, MS. CLIFFORD'S agents, JANKLOW & NESBIT, and MR. JANKLOW received the final and Fourth Payment on the agreed advance from St. Martin's Press.

48. On February 15, 2019, MS. CLIFFORD contacted MR. JANKLOW several times directly, leaving both a voicemail and a text message asking MR. JANKLOW to "Please call [her]." MR. JANKLOW, MS. CLIFFORD'S literary agent, refused to take or return her calls on that day.

49. Despite recognizing that he had legal obligations to MS. CLIFFORD, MR. JANKLOW insisted on a practice he described as "blanking" a signed client. An approach he describes as "being unresponsive, out of communication." Certainly, such practices run afoul of the fiduciary obligations to make truthful and complete disclosure to MS. CLIFFORD.

50. On February 16, 2019, MS. CLIFFORD called MR. JANKLOW at 2:30 pm. He again refused to take calls or respond to any of her messages throughout the day until approximately 7:00 pm that evening. At that time, MS. CLIFFORD told MR. JANKLOW, for the

first time, spoke about the monies due under the contracts. MS. CLIFFORD told MR. JANKLOW that she did not receive the Third payment. MR. JANKLOW did not make truthful and complete disclosure to MS. CLIFFORD that he had intentionally, without her authorization, diverted her monies to Michael Avenatti in breach of the *Retainer Agreement* and the trust and confidence placed in MR. JANKLOW by MS. CLIFFORD.

51. On February 19, 2019[3], MS. CLIFFORD was finally informed that JANKLOW & NESBIT, at the direction of MR. JANKLOW had redirected the Second and Third payments due under the agreement with St. Martin's Press to Michael Avenatti without her knowledge or authorization.

52. Upon discovering the unauthorized transfers of the Second and Third payments to Michael Avenatti, MS. CLIFFORD directed MR. JANKLOW to instruct JANKLOW & NESBIT to transfer the fourth payment to an account controlled by her in accordance with the *Retainer Agreement*. JANKLOW & NESBIT confirmed the instruction with both written and verbal confirmation from MS. CLIFFORD.

53. On or about February 21, 2019, JANKLOW & NESBIT sent by wire to a bank account designated by MS. CLIFFORD a payment of approximately $212,500, representing the $250,000 payment less the literary agency fee.

54. In accordance with the terms of the *Retainer Agreement,* MS. CLIFFORD received the Fourth payment from St. Martin's Press via JANKLOW & NESBIT.

55. To date, LUCAS JANKLOW and JANKLOW & NESBIT have not paid MS. CLIFFORD or STORMY ENTERTAINMENT, INC., any monies due from the Third payment by

---

[3] February 19, 2019, is also when Plaintiff terminated her attorney-client relationship with Michael Avenatti.

St. Martin's Press received by JANKLOW & NESBIT but wrongfully and without authorization by MS. CLIFFORD diverted by LUCAS JANKLOW to Michael Avenatti in breach of the *Retainer Agreement* and the trust and confidence placed in LUCAS JANKLOW by MS. CLIFFORD.

## FIRST CAUSE OF ACTION
### Breach of Contract (Retainer Agreement)

56.  Plaintiffs incorporate herein by reference paragraphs 1-54 above.

57.  STORMY ENTERTAINMENT, INC., and JANKLOW & NESBIT executed a *Retainer Agreement* wherein, in exchange for services as a literary agent, JANKLOW & NESBIT would receive a portion of the advances on the publication of the literary work. Under the terms of the *Retainer Agreement,* JANKLOW & NESBIT would promptly remit to STORMY ENTERTAINMENT, INC., the balance of the Gross Proceeds.

58.  As outlined in more detail above, JANKLOW & NESBIT breached the contract by failing to promptly remit to STORMY ENTERTAINMENT, INC., the balance of the Gross Proceeds and instead redirected the amounts to a third-party, Michael Avenatti, without MS. CLIFFORD'S knowledge or consent; and

59.  STORMY ENTERTAINMENT, INC. suffered damages due to the breach for the failure to make the necessary and required payments.

## SECOND CAUSE OF ACTION
### Breach of Fiduciary Duty
### LUCAS JANKLOW

60.  Plaintiffs incorporate herein by reference paragraphs 1-58 above.

61.  LUCAS JANKLOW was a literary agent for STEPHANIE CLIFFORD engaged to provide advice and counsel in the negotiation of the *Author Contract* with St. Martin's Press;

62.  STEPHANIE CLIFFORD relied upon his expertise as a premier literary agent dedicated to the interests of his writer clients.

63. STEPHANIE CLIFFORD fully authorized and empowered him, as her agent, to act on her behalf as the Author in any way arising out of the *Author Contract* with St. Martin's Press, including the receipt and disbursement of monies under the *Author Contract* with St. Martin's Press as directed by the Author, STEPHANIE CLIFFORD.

64. Further, and as outlined above, STEPHANIE CLIFFORD reposed trust and confidence in LUCAS JANKLOW by agreeing that all funds from the *Author Contract* with St. Martin's Press would be initially sent to LUCAS JANKLOW, whereupon he would promptly remit the balance of the Gross Proceeds as she directed.

65. The principal-agent relationship between STEPHANIE CLIFFORD and LUCAS JANKLOW placed a duty upon him to act for and to give advice for the benefit of STEPHANIE CLIFFORD concerning the *Author Contract,* including but not limited to the receipt and disbursement of monies under the *Author Contract* with St. Martin's Press as directed by the Author, STEPHANIE CLIFFORD.

66. LUCAS JANKLOW, as agent for his principal, MS. CLIFFORD owed her a fiduciary duty.

67. A fiduciary relationship imposes a duty upon LUCAS JANKLOW to disclose material information, and he failed to do so.

68. The fiduciary relationship required LUCAS JANKLOW to make truthful and complete disclosures to STEPHANIE CLIFFORD, and he failed to do so.

69. As outlined above, a fiduciary relationship existed between STEPHANIE CLIFFORD and LUCAS JANKLOW to properly account for all monies received by JANKLOW & NESBIT for her literary efforts and remit the monies to her without interference, delay, or delivery to third parties and strangers to the contractual agreements, and he failed to do so.

70. The facts, as alleged above, set forth numerous occasions when STEPHANIE CLIFFORD attempted to communicate with LUCAS JANKLOW and requested communication concerning the failure to make the Second and Third payments. LUCAS JANKLOW intentionally ignored and refused to communicate with CLIFFORD and knowingly concealed that he was diverting monies to Michael Avenatti without her knowledge or consent in violation of his fiduciary duties.

71. In his dealings with STEPHANIE CLIFFORD, LUCAS JANKLOW consciously chose a self-described course of action of a "blanking" STEPHANIE CLIFFORD. An approach described by him as "being unresponsive, out of communication." Such practices violate the most fundamental obligation between agent and principal: open communication and complete and truthful disclosure of material facts.

72. As outlined above, Defendant LUCAS JANKLOW, breached the fiduciary duties to STEPHANIE CLIFFORD; and was the direct cause of damages to her as she has never received all of the monies due and owed under the terms of the *Author Contract* with St. Martin's Press and sent to the attention of MR. JANKLOW to be paid to her under the terms of the *Retainer Agreement* with JANKLOW & NESBIT.

73. As a direct and proximate result of the acts and omissions of LUCAS JANKLOW STEPHANIE CLIFFORD is entitled to damages in the form of economic loss and emotional distress all in excess of Seventy-five Thousand and No/100 Dollars ($75,000.00). STEPHANIE CLIFFORD further seeks an award of punitive or exemplary damages against LUCAS JANKLOW.

**DEMAND FOR RELIEF**

WHEREFORE, Plaintiffs STEPHANIE CLIFFORD a.k.a. "Stormy Daniels" and STORMY ENTERTAINMENT, INC., seek judgment against Defendants, LUCAS JANKLOW and JANKLOW PARTNERS, L.L.C. d/b/a JANKLOW & NESBIT ASSOCIATES as follows:

a. For their First Claim for Relief set forth above, Plaintiffs seek judgment against Defendants for breach of contract for $175,000.00.

b. For their Second Claim for Relief set forth above, Plaintiffs seek judgment against the Defendants for damages for breach of fiduciary duty in the form of economic loss and emotional distress, all in excess of Seventy-five Thousand and No/100 Dollars ($75,000.00). Plaintiffs further seek an award of punitive or exemplary damages against LUCAS JANKLOW and JANKLOW PARTNERS, L.L.C. d/b/a JANKLOW & NESBIT ASSOCIATES in excess of Seventy-five Thousand and No/100 Dollars ($75,000.00) to deter said Defendants from betraying the trust and confidence of their principals, like Plaintiffs herein, in the future and to apprise the public at large that society does not condone such actions or omissions to act.

c. For the costs of this action, interest as provided by law, and for all other and further relief that this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: May 9, 2022

Respectfully submitted,

*/s/ Guy A. Fortney*
Clark O. Brewster, *Admitted Pro Hac Vice*
Guy A. Fortney, *Admitted Pro Hac Vice*
BREWSTER & DEANGELIS, PLLC
2617 East 21st Street
Tulsa, OK  74114
CBrewster@brewsterlaw.com
gfortney@brewsterlaw.com
Phone: (918) 742-2021
Fax:     (918) 742-2197
And

Michael F. Kuzow,
WESTERMANN, SHEEHY, SAMMAN
& GILLESPIE, LLP
90 Merrick Ave., Ste. 802
East Meadow, NY 11554
Phone: 516-794-7500
Fax: 516-794-1277

*Counsel for Plaintiffs*

### CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2022, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants who have appeared in this case.

*/s/ Guy A. Fortney*
Guy A. Fortney, *Admitted Pro Hac Vice*