UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x

STEPHANIE CLIFFORD A/KA STORMY DANIELS
AND STORMY ENTERTAINMENT, INC.,

                        Plaintiffs,                                  Case No. 1:22-cv-01259-MKV

          -against-

JANKLOW PARTNERS, LLC D/B/A JANKLOW &
NESBIT ASSOCIATES; AND LUCAS JANKLOW,

                        Defendants.
----------------------------------------------------------------------x

**MEMORDANDUM OF LAW
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

May 20, 2022

LANI ADLER PARTNERS LLC
275 West 96th Street, Suite 15G
New York, New York  10025
(646) 732-3260
LAdler@LaniAdlerPartners.com

*Attorneys for Defendants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ...............................................................................................1

THE FACTS ..............................................................................................................................3

ARGUMENT .............................................................................................................................8

I.       PLAINTIFFS LACK STANDING ................................................................................8

         A.       Avenatti's Criminal Conviction Establishes that He Took the Money
                  Plaintiffs Seek to Recover ...............................................................................11

         B.       The Facts on Which the Jury Convicted Avenatti Preclude Plaintiffs from
                  Establishing the Causal Connection Requisite to Article III Standing .................12

II.      PLAINTIFFS' CLAIMS ARE INSUFFICIENT UNDER RULE12(b)(6) .....................17

         A.       Plaintiffs' Claim for Breach of Contract Fails because Plaintiff Has Not
                  Alleged Facts Sufficient to Show that Defendants Breached or That Plaintiffs'
                  Damages were the Result of Defendants' Actions ..............................................18

         B.       Plaintiffs Fail to State A Claim for Breach of Fiduciary Duty .............................20

III.     INDEPENDENTLY, THE CLAIM FOR BREACH OF FIDUCIARY DUTY MUST
         BE DISMISSED BECAUSE IT IS DUPLICATIVE .......................................................24

IV.      PLAINTIFF'S ASSERTION OF ADDITIONAL "ECONOMIC LOSS" AND
         "EMOTIONAL DISTRESS DAMAGES" LIKEWISE WARRANTS DISMISSAL
         OF THE CLAIM FOR BREACH OF FIDUCIARY DUTY .............................................25

V.       BECAUSE PLAINTIFFS LACK THE CAPACITY TO SUE, THIS ACTION MUST
         BE DISMISSED ..........................................................................................................26

VI.      PLAINTIFF'S FIDUCIARY BREACH CLAIM IS BARRED BY THE STATUTE OF
         LIMITATIONS ............................................................................................................27

VII.     THE INDIVIDUAL DEFENDANT MUST BE DISMISSED.........................................30

         A.       The Claim for Breach of Contract Against Mr. Janklow Must be Dismissed .......30

         B.       The Claim for Breach of Fiduciary Duty Against Mr. Janklow Must Be
                  Dismissed ........................................................................................................31

VIII.    BECAUSE AVENATTI IS AN INDISPENSABLE PARTY, WHOSE PRESENCE
         DESTROYS DIVERSITY JURISDICTION, THIS ACTION MUST BE DISMISSED
         PURSUANT TO RULE 19, FED. R. CIV. P. ................................................................32

A.      Avenatti is a "Required Party" Under Rule 19(a) ...................................................34

B.      Avenatti is "Indispensable" .....................................................................................34

CONCLUSION.......................................................................................................................35

## **TABLE OF AUTHORITIES**

**Cases**

*621 Two LLC v. Leggett &* Platt, Inc.,
No. CV 20-4883, 2021 WL 4355450 (C.D.Cal. Jul. 9. 2021) .................................................27

*Abbas Corp. Ltd. v. Michael Aziz Oriental Rugs, Inc.,*
14 Civ. 6771, 2018 WL 1779380 (S.D.N.Y. April 3, 2018)....................................................23

*Akridge v. Whole Foods Mkt. Grp., Inc.,*
20 Civ. 10900, 2020 WL 955945 (S.D.N.Y. Mar. 30, 2022) ....................................................9

*Al Aqueelah Internat'l Real Estate v. DACA Castaic, LLC,*
No. CV-21-2141, 2021 WL 4352330 (C.D. Cal. Aug. 2, 2021)........................................ 26-27

*Alkholi v. Macklowe,*
17 Civ. 16, 2017 WL 6804076 (S.D.N.Y. Dec. 22, 2017)...............................................30, 31

*Am. Home Energy Inc. v. AEC Yield Capital,* LLC,
21-CV01337, 2022 WL 595186 (E.D.N.Y. Feb. 28, 2022)..............................................10, 18

*Am. Master Lease LLC. v. Idanta Partners, LTD.,*
225 Cal. App. 4th 1451 (Ct. App. 2d Dist. 2014) ............................................................. 29-30

*Ashcroft v. Iqbal,*
556 U.S. 662, (2009)........................................................................................................17, 18

*Babin v. Quality Energy Services, Inc.,*
877 F.3d 621 (5th Cir. 2017) ...........................................................................................28, 29

*Ball v. New York City Council,*
17-CV-4828, 2018 WL 4625625 (S.D.N.Y. Sept. 26, 2018) .................................................30

*Barbagallo v. Marcum LLP,*
No. 11-CV-1358, 2012 WL 1664238 (E.D.N.Y. May 11, 2012). ..........................................25

*Barton v. Northeast Transport, Inc.,*
21-CV-326, 2022 WL 203593 (S.D.N.Y. Jan. 24, 2022) .......................................................35

*Bell Atl. Corp. v. Twombley,*
550 U.S. 544 (2007)...............................................................................................................17

*Beltran v. Capitol Records,*
No. 12-cv-102, 2013 WL 968248 (N.D. Cal. Mar. 12, 2013) ................................................27

*Berkshire Bank v. Lloyds Banking Group PLC,*
2022 WL 569819 (2d Cir. Feb. 25, 2022)..............................................................................28

*Borrani v. Nationstar Mortg. LLC,*
  NO. 20-cv-1444, 2022 WL 837115 (S.D.N.Y. Mar. 21, 2022) ........................................ 10-11

*Carter v. Healthport Techs., LLC,*
  822 F.3d 47 (2d Cir. 2016) ................................................................................................. 9, 10

*Celle v. Barclays Bank P.L.C.*
  48 A.D.3d 301, 851 N.Y.S.2d 500 (1st Dept. 2008) .............................................................. 24

*Chambers v. Time Warner, Inc.,*
  282 F.3d 147 (2d Cir. 2002) ................................................................................................... 10

*Chord Assocs., LLC v. Protech,*
  No. 07-CV-5138, 2011 WL 13302692 (E.D.N.Y. Mar. 30, 2011) ......................................... 17

*Coggins v. County of Nassau,*
  988 F. Supp.2d 231, 242 (E.D.N.Y.2013), *aff'd in part, sub nom. Coggins v. Buonora,* 776
  F.3d 108 (2d Cir. 2015), *cert. den.,* 125 S. Ct. 2335 (2015) .................................................... 18

*Commerzbank AG v. Bank of New York Mellon,*
  15 Civ. 10029, 2018 WL 1157278 (S.D.N.Y. Mar. 21, 2017) ................................................ 28

*Cortec Industries, Inc. v. Sum Holding LP,*
  949 F.2d 42 (2d Cir. 1991) ...................................................................................................... 10

*Crigger v. Fahnestock & Co.,*
  443 F.3d 230 (2d Cir. 2006) ..................................................................................................... 32

*DaimlerChrysler Corp. v. Cuno,*
  547 U.S.332 (2006) ..................................................................................................................... 8

*Davis v. City of N.Y.,*
  No. 16 CIV. 3685, 2017 WL 11505252 (E.D.N.Y. May 25, 2017) ........................................ 10

*Diesel Props S.r.l. v. Greystone Business Credit II LLC,*
  631 F.3d 42 (2d Cir. 2011) ................................................................................................. 13, 14

*Dondero v. Chopra & Nocero LLP,*
  21-1487-cv, 2022 WL 320967 (2d Cir. Feb. 3, 2022) ...................................................... 20-21

*Engel v. Hawkins,*
  No. 96 CIV. 1690, 1996 WL 719607 (S.D.N.Y. Dec. 13, 1996) ............................................ 27

*EQT Infrastructure LTD v. Smith,*
  861 F.Supp.2d 220 (S.D.N.Y. 2012) ................................................................................... 30-31

*Francis v. Kings Manor, Inc.,*
  992 F.3d 67 (2d Cir. 2021) ....................................................................................................... 18

*Fed. Nat'l Mortg. Assoc. v. Olympia Mortg. Corp*.,
    No. 04-CV-4971, 2013 WL 417352 (E.D.N.Y. Jan. 29, 2013) ........................................15, 21

*Gelb v. Royal Global Ins. Co.,*
    798 F.2d 38 (2d Cir. 1986)..................................................................................................16

*Global Fin. Corp. v. Triarc Corp.,*
    93 N.Y.2d 525, 693 N.Y.S.2d 479, 715 N.E.2d 482 (1999)..................................................28

*Glob. Network Commc'ns, Inc. v. City of N.Y.,*
    458 F.3d 150 (2d Cir. 2006)................................................................................................19

*Gomez v. City of New York*,
    704 Fed. Appx. 25 (2d Cir. 2017) .......................................................................................11

*Guidehouse LLP v. Shah,*
    19-cv-09479, 2022 WL 769209 (S.D.N.Y. Feb. 28, 2022) ...................................................26

*Harris v. Mills*,
    572 F.3d 66 (2d Cir. 2009)..................................................................................................17

*Hess v. Godiva Chocolatier, Inc*.,
    463 F. Supp.3d 453 (S.D.N.Y. 2020),..................................................................................10

*IDT Corp. v. Morgan Stanley Dean Witter & Co*.,
    12 N.Y.3d 132 (2009) .........................................................................................................30

*In re Allianz Global Investors,*
    20 Civ. 5615, 2021 WL 4481215 (S.D.N.Y. Sept. 30, 2021)................................................24

*In re Lifetrade* Litigation,
    17-CV-2987, 2022 WL 1448431 (S.D.N.Y. May 9, 2022.....................................................32

*In re Waste Management Data Breach Litigation*,
    21cv6147, 2022 WL 561734 (S.D.N.Y. Feb. 24, 2022) ..................................................15, 25

*Israel v. Chabra*,
    537 F.3d 86 (2d Cir.2008)...................................................................................................31

*Katz v. Donna Karan Co*., L.L.C.,
    872 F.3d 114 (2d Cir. 2017)................................................................................................10

*King Cty. Wash. v. IKB Deutsche Industriebank A.G*.,
    863 F. Supp. 2d 288 (S.D.N.Y. 2012)..................................................................................16

*L-7 Designs, Inc. v. Old Navy, LLC*,
    647 F.3d 419 (2d Cir. 2011).......................................................................................... 17-18

*Logfret v. Gerber Finance, Inc.*,
  20 Civ. 7142, 2021 WL 4135151 (S.D.N.Y. Sept. 10, 2021) ...............................................24

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)......................................................................................................8, 9

*Mahon v. Ticor Title Ins. Co.*,
  683 F.3d 59 (2d Cir. 2012)...........................................................................................9, 17

*Makarova v. U.S.*,
  201 F.3d 110 (2d Cir. 2000)..............................................................................................8

*Medcalf v. Walsh*,
  938 F. Supp.2d 478 (S.D.N.Y. 2013).............................................................................25

*Murphy v. Morlitz*,
  751 Fed. Appx. 28 (2d Cir. 2018) ...................................................................................30

*Murtha v. Yonkers Child Care Ass'n, Inc.*,
  45 N.Y.2d 913 (N.Y. 1978) ............................................................................................30

*Muto v. CBS Corp.*,
  668 F.3d 53 (2d Cir. 2012)..............................................................................................28

*Nat'l Market Share, Inc. v. Sterling Nat. Bank*,
  392 F.3d 520 (2d Cir. 2004)............................................................................................20

*Neder v. U.S.*,
  527 U.S. 1 (1999)......................................................................................................12, 22

*Nicholas v. Trump*,
  433 F. Supp.3d 581 (S.D.N.Y. 2020)................................................................................8

*Plutzer on behalf of Tharanco Grp., Inc. v. Bankers Trust Co. of S.D.*,
  1:21-cv-3632, 2022 WL 596356 (S.D.N.Y. Feb. 28, 2022) ..............................................9

*Posner v. Merrill Lynch, Perce, Fenner & Smith, Inc.*,
  469 F. Supp. 972 (S.D.N.Y. 1979)..................................................................................28

*Quinn v. City of N.Y.*,
  20 Civ. 2666, 2022 WL 874852 (S.D.N.Y. Mar. 24, 2022) ............................................34

*Rice v. Intercept Pharmaceuticals, Inc.*,
  No. 21-cv-0036, 2022 WL 8837114 (S.D.N.Y.2022) ......................................................18

*Rolon v. Hennenman*,
  517 F.3d 140 (2d Cir. 2008)............................................................................................17

*Romback v. Chang*,
    355 F.3d 164 (2d Cir. 2004)..........................................................................................32

*Rothman v. Gregor,*
    220 F.3d 81 (2d Cir. 2000).............................................................................................10

*Rubio v. BSDB Management Inc.,*
    19-CV-11880, 2021 WL 102651 (S.D.N.Y. Jan. 12, 2021) ........................................32

*RSL Communications PLC v. Bildirici*,
    649 F. Supp.2d 184 (S.D.N.Y. 2009)............................................................................23

*Schwartz v. Capital Liquidators, Inc.*,
    984 F.2d 53 (2d Cir. 1993).............................................................................................10

*Snowbridge Advisors LLS v. ESO Capital Partners UK LLP*,
    No. 21-CV-9086, 2022 WL 1093194 (S.D.N.Y. Apr. 11, 2022) ......................................10, 13

*Spartan Capital Secs., LLC v. Sports Field Holdings, Inc*.,
    20 Civ. 4210, 2021 WL 665031 (S.D.N.Y. Feb. 19, 2021) .........................................24

*Spinelli v. Nat'l Football League*,
    903 F.3d 185 (2d Cir. 2018)..........................................................................................15

*Tasini v. N.Y.Times Co*.,
    184 F. Supp.2d 350 (S.D.N.Y. 2002)..............................................................................8

*The Najjar Group, LLC. V. West 56th Hotel LLC*,
    No. 14-CV-7120, 2017 WL 819487 (S.D.N.Y. Mar. 1, 2017)...................................24

*Tradeshift, Inc. v. Smucker Svcs. Co*.,
    20-cv-3661 (S.D.N.Y. Sept. 29, 2021) .......................................................................26, 32

*TufAmerican, Inc. v. Diamond,*
    968 F. Supp.2d 588 (S.D.N.Y. 2013)...........................................................................18

*Universal Reins. Co. v. St. Paul Fire & Marine Ins. Co.,*
    312 F.3d 82 (2d Cir. 2002)............................................................................................33

*U.S. v. Cwibeker*,
    No. 12-CR-0632, 2015 WL 459315 (E.D.N.Y. Feb. 2, 2015)....................................13

*U.S. v. Frenkel*,
    682 Fed Appx. 20 (2d Cir. 2017)..................................................................................12

*U.S. v. Greenberg*,
    835 F.3d 295 (2d Cir. 2016)..........................................................................................12

*Utica Mutual Ins. Co. v. Munich Reins. American, Inc.*,
    7 F.4d 50 (2d Cir. 2021)............................................................................................20

*V & P Trading Co. v. United Charter, LLC*,
    212 Cal. App. 4th 126 (2012)). ................................................................................27

*Variblend Dual Dispensing Systems LLC v. Crystal Int'l Grp. Inc.*,
    18 Civ. 10758, 2021 WL 1198834 (S.D.N.Y. Mar. 30, 2021) ................................20

*Viacom Int'l, Inc. v. Kearny*,
    212 F.3d 721 (2d Cir. 2000)...............................................................................33, 34

*Young v. Adolph,*
    821 So.2d 101 (La. App. 2002)................................................................................29

## **Rules**

Fed. R. Civ. P. 12(b)(1).....................................................................................2, 8, 9, 10

Fed. R. Civ. P. 12(b)(6)............................................................................................2, 17

Fed. R. Civ. P. 12(b)(7)............................................................................................2, 33

Fed. R. Civ. P. 9 ...............................................................................................2, 25, 32

Fed. R. Civ. P. 19 ...............................................................................................2, 33, 34

Fed. R. Evidence Rule 201(b) and (c)............................................................................10

## **Other Authorities**

C. Wright and A. Miller,
    5A Fed. Practice & Procedure §1312 (4th ed.) (April 2022 update) ......................25

Restatement (Third) of Agency, § 2.03 (2006)..............................................................11

## PRELIMINARY STATEMENT

On February 4, 2022, lawyer Michael Avenatti was convicted of wire fraud and aggravated identity theft in a scheme in which he sent a forged bank authorization ("the Forged Authorization"), bearing the actual signature of his then-client, Stormy Daniels, the stage name of Stephanie Clifford, to Lucas Janklow, a literary agent with the Janklow & Nesbit Associates literary agency ("JNA").[1]  The Forged Authorization instructed JNA to pay forthcoming book advances due  Ms. Daniels to a bank account that Avenatti falsely stated he had set up for Ms. Daniels ("the Forged Account").  Unknown to Defendants and Ms. Daniels,  Avenatti  took  for himself the third book advance timely sent to the Forged Account by JNA. Adler Aff. Ex. H at 28-20.  In this action, Plaintiff Daniels and her solely-owned corporation, Plaintiff Stormy Entertainment, Inc., now sue JNA and Mr. Janklow for breach of contract and breach of fiduciary duty *for precisely this third book payment*, which Avenatti was convicted, based on the testimony of Ms. Daniels and Mr. Janklow, among others, of taking from Ms. Daniels. Notwithstanding Ms. Daniels' sworn testimony in the Avenatti criminal case that she learned from JNA, two years ago*,* that Avenatti had – while he was the Plaintiffs' lawyer – sent JNA the Forged Authorization, and that JNA had timely made the third book advance payments to the Forged Account,[2] Ms. Daniels now disingenuously seeks, through the back-door, to have one of her agents, JNA, effectively indemnify her for  the loss she testified was caused by the misconduct of Avenatti, her then-lawyer and another of her agents – misconduct that, as Ms.

---

[1] During her testimony at the Avenatti criminal trial, Case 1:19-cr-00374-JMF, Ms. Daniels testified that she preferred to be called Ms. Daniels in court rather than Ms. Clifford.  ECF 383, 884:1-10. (attached in Ex.  C to the accompanying Affirmation of Lani A. Adler in Support of Defendants' Motion to Dismiss, dated May 20, 2022) ("Adler Aff.").  For that reason, Defendants call Ms. Daniels by that name in these motion papers.  References herein to the Avenatti criminal case transcript are denominated by the ECF number of the document containing the testimony or other material cited,  with the publicly available ECF filing number.  For ease of reference, these publicly available documents are attached as exhibits to the accompanying Adler Affirmation.

[2] Ms. Daniels testified that on February 19, 2019, she learned "that Michael had been lying and stealing from me, and that my payments were sent months before." Adler Aff. Ex. C, ECF 383 at 987.

Daniels testified, Avenatti affirmatively concealed from both Ms. Daniels and Defendants in the fraudulent scheme for which Avenatti was found guilty. *See* Adler Aff. ¶7 & Ex. H.

Avenatti took affirmative actions to prevent Mr. Janklow and Ms. Daniels from speaking to each other.  Ms. Daniels testified that Avenatti repeatedly told her orally and in writing that the payment which JNA made had not been made. *Id.*[3]  Mr. Janklow testified at the Avenatti trial not only about his belief that the Forged Account was legitimate and one from which Ms. Daniels had timely received the payments made to it by JNA, but also that Avenatti insisted that he, Avenatti,  alone communicate directly with Ms. Daniels, about the book advance payments. Adler Aff. ¶¶5, 7, 19-27, 29, 31.  Judge Furman, before whom the Avenatti criminal trial was conducted, stated that "the evidence that [Avenatti] engaged in a scheme to defraud was overwhelming and largely undisputed." Adler Aff.¶7 & Ex. H, ECF 421 at 2, 13, 28-29.

In bringing this action, Plaintiffs were necessarily aware of Avenatti's scheme and these facts because they quote Mr. Janklow's trial testimony in the Amended Complaint.[4]  Yet, though Ms. Daniels herself provided critical testimony that resulted in Avenatti's conviction and the jury's determination that Avenatti was responsible for the scheme he admittedly undertook in obtaining for his own use the very payment Plaintiffs seek here to recover from Defendants, the Amended Complaint conspicuously fails to even reference Avenatti's scheme, conviction or the Forged Authorization.  In an about-face from her trial testimony, Ms. Daniels now contends that JNA and Mr. Janklow caused the damages for which the jury determined that Avenatti, not JNA or Mr. Janklow, was responsible.

Defendants move to dismiss the Amended Complaint pursuant to Rules 12(b)(1), 12(b)(6), 12(b)(7), 9 and 19, Fed. R. Civ. P., on the grounds that Plaintiffs lack standing and the

---

[3] *See also* Adler Aff. Ex. C, ECF 383 at 925, 932:13-20, 935:3-18, 937:11-24, 941, 943, 945:20-25, 946:1.
[4] *See* Am. Compl. ¶¶29, 31, 49.

capacity to sue; that Plaintiffs have failed to adequately plead the elements of the claims for breach of contract and breach of fiduciary duty they purport to assert, including with respect to any viable claims against Mr. Janklow, individually; that the breach of fiduciary duty claim is barred by the statute of limitations and is duplicative of the claim for breach of contract; and that Avenatti, who was the proximate cause of the harm for which Plaintiffs erroneously sue Defendants, is an indispensable party, whose California citizenship will destroy diversity.

## <u>THE FACTS</u>

The facts are documented in the exhibits to the accompanying Adler Affirmation, which are public record and/or were relied upon by Plaintiffs in framing the Amended Complaint. Briefly, they are as follows:  Michael Avenatti was Plaintiffs' attorney from February 2018 until their relationship terminated on or about February 19, 2019. Adler Aff. Ex. C, ECF 377 at 1610; Am. Compl. n.2.  Avenatti is a citizen and resident of California. Adler Aff. Exs. I, J.

Plaintiff Stormy Entertainment, Inc. is a California corporation, with a principal place of business in California, Am. Compl. ¶4, incorporated on October 3, 2002. Adler Aff. Exs. K, L. The corporate rights and privileges of Stormy Entertainment, Inc. were suspended by the California Secretary of State and Franchise Tax Board as of December 1, 2016, for failure to pay taxes. *Id*. Exs. K, L, J. Ms. Daniels, the other Plaintiff, is a citizen of Louisiana.  Am. Compl. ¶3.

Both JNA and Mr. Janklow are citizens of New York.  *Id*. ¶¶5-6.

On April 13, 2018, Plaintiff "Stormy Entertainment, Inc., c/o Michael J. Avenatti, Esq., EAGAN AVENATTI, LLP," entered into a written agreement with JNA ("the Retainer Agreement"), pursuant to which JNA was authorized to negotiate for the sale of rights in a non-fiction book to be authored by Ms. Daniels.  Adler Aff. Ex. N.  Among other things, the Retainer Agreement provided that JNA would be paid a fixed percentage commission on payments earned

from the disposition of rights in the book, that the agreement would be governed by the laws of New York, and that payments would be made to JNA, which, after deducting its agreed commission, would "promptly remit to you the balance of the Gross Proceeds." *Id.* "You" is specified to be "Stormy Entertainment, Inc., c/o Michael J. Avenatti, Esq., EAGAN AVENATTI, LLP." *Id.* The Retainer Agreement also provided that it could not be altered or amended "except in writing." It was signed by Ms. Daniels, as president of Stormy Entertainment, Inc., some sixteen months after California suspended the corporate rights and privileges of Stormy Entertainment, Inc., and by Mr. Janklow on behalf of JNA.

Ms. Daniels also entered into an agreement with St. Martin's Press, "care of" JNA, made as of April 3, 2018, for publication of a non-fiction book ("the Publishing Agreement"). Adler Aff. Ex. O. Among other things, this agreement provided for payment of an aggregate $800,000 advance to be paid in four payments to Ms. Daniels or her authorized representative.[5] The Publishing Agreement was signed by Ms. Daniels and the publisher. *Id.*

Among other things, during the Avenatti criminal trial, Ms. Daniels testified that she retained Avenatti as her attorney on February 27, 2018, when she signed a retainer agreement with him; and that Avenatti sent JNA proper wire instructions to JNA to use (and which JNA did use) in making the first of the book advance payments to Plaintiffs. Adler Aff. Ex. C, ECF 383 at 891-892, 901-910.

Mr. Janklow testified that JNA required something in writing signed by Ms. Daniels to use a different account after Avenatti requested that the second book advance payment be made

---

[5] These payments were to be made as follows: $250,000 upon signing of the Publishing Agreement; $175,000 upon the Author's delivery and Publisher's acceptance of the manuscript; $175,000 upon publication (but no later than six months after acceptance of the manuscript, provided the Author had completed certain publicity requirements); and $200,000 upon the later of six months from publication of the Author's completion of publicity requirements and compliance with media restrictions. The Amended Complaint cites and quotes the Publishing Agreement but did not attach it or the Retainer Agreement, which the Amended Complaint likewise cites.

to an account different than that to which the first advance payment was made; and Avenatti's former assistant testified at the trial that the Forged Authorization was created by Avenatti who then asked her to cut and paste a copy of Ms. Daniels' signature on it.  Adler Aff. Exs. P, Q, G, ECF 379 at 411-412.  Ms. Daniels testified that she did not know of the Forged Authorization at the time it was sent or for many months after until JNA sent her a copy of it on February 19, 2019, when she also learned that JNA had timely made the second book advance to the Forged Account, on August 1 and 3, 2018, and that had JNA timely made the third book advance payment to the Forged Account, on September 17, 2017, because Avenatti continued to tell Ms. Daniels – through February 19, 2019 – that the publisher had not made those payments. Adler Aff. ¶¶7,3 & Ex. G, ECF 379 at 28-29; Ex. C, ECF 383 at 997.  Mr. Janklow testified that he believed the Forged Authorization was legitimate and signed by Ms. Daniels; and that Avenatti repeatedly told Mr. Janklow that he should not communicate directly with Ms. Daniels about the book advance payments because he, Avenatti, was handling it.[6]  Ms. Daniels testified that on February 19, 2019, JNA sent Ms. Daniels a letter detailing which bank account each book advance payment had been made to, and when, with a copy of the bank wire transfer documents and a copy of the Forged Authorization. Adler Aff. ¶3 & Ex. E.

On February 4, 2022, Avenatti was convicted of aggravated identity theft and wire fraud. Adler Aff. Ex. A.  Based on Judge Furman's jury instructions, Adler Aff. Ex. R, ECF 391at 1721-1752, , the conviction establishes that the jury found, beyond a reasonable doubt, that on the wire fraud count, Avenatti

> devised a scheme to obtain payments owed to Ms. Stephanie Clifford, also known as Stormy Daniels, under Ms. Clifford's book contract by falsely representing to Ms. Clifford's literary agent, in interstate communications and otherwise, that Ms.

---

[6] Mr. Janklow testified at the Avenatti trial that when he received the Forged Authorization, he believed Ms. Daniels had signed it "[b]ecause it came from her attorney."  Adler Aff. Ex. F, ECF 377 at 156:2-25.  *See* Adler Aff. ¶¶ 5, 19-27, 29, 31.

Clifford had given authority for payments to be sent by wire to an account controlled by the defendant by converting these payments to his own use, falsely representing to Ms. Clifford, in interstate communications and otherwise, that the payments had not been made. *Id.* at 1734:10-19.

To find Avenatti guilty of the aggravated identity theft count, Judge Furman instructed the jury that it would have to find that Avenatti "without lawful authority, used Ms. Clifford's name and signature on a document during and in relation to the wire fraud scheme . . ." *Id.* at 1734: 22-25.

The Amended Complaint alleges that JNA and Mr. Janklow breached the Retainer Agreement by "fail[ing] to 'promptly remit'" the second and third book payments[7] to Ms. Daniels, because Defendants "intentionally" "divert[ed] the monies to a third-party account controlled by Michael Avenatti," Am. Compl. ¶¶27, 28, 30, 31, 36, 38, causing damages to Plaintiffs in the amount of $175,000.[8] Am. Compl. ¶¶ 27, 28,36,55 57-59, Demand for Relief.

The Amended Complaint also alleges that Mr. Janklow breached fiduciary duty to Ms. Daniels by "without authorization or knowledge by Ms. Clifford . . . divert[ing]," "intentionally," the second and third advance payments to Avenatti, Am. Compl. ¶¶28, 31, 38, and by failing "to make the required truthful and complete disclosure to Ms. Clifford" that "[Defendants] had diverted her monies to Michael Avenatti in breach of the Retainer Agreement and the trust and confidence placed in them by Ms. Clifford." *Id.* ¶43.

---

[7] At trial, Ms. Daniels testified that Avenatti did not immediately pay her the second advance payment; and there was evidence that once Avenatti secured a personal loan for himself from a third party, he sent Ms. Daniels a cashier's check in the amount of the second advance payment months after JNA had timely wired the second advance payment to the Forged Account. *See* Am. Compl. ¶34. Though Plaintiffs allege that Defendants breached by failing to remit to them both the second and third book advance payments, the damages they seek are for the amount of only the third advance payment. Am. Compl.¶¶35 & Prayer for Relief (a).

[8] $175,000 is the full amount of the third book advance payment, calculated before deduction of the JNA commission for that payment.

The Amended Complaint alleges that literally the same conduct by Defendants constituted a "breach of the Retainer Agreement and the trust and confidence placed in Lucas Janklow by Ms. Clifford." *Id*. ¶¶ 27, 28, 30, 31, 36, 38, 41, 43, 45, 50, 55.

The breach of fiduciary duty claim also alleges that Mr. Janklow did not respond to Ms. Clifford's inquiries to him on August 9, 2018; Sept. 15, 2018; Nov. 19, 2018; Nov. 20, 2018; Dec. 17, 2018; Feb. 15, 2019 and Feb. 16, 2019. Am. Compl ¶¶33, 37, 40-41, 53.  However, at the Avenatti trial  Mr. Janklow testified that he never spoke to Ms. Daniels about money because Avenatti told him not to, Cr. Tr. 14:6-12, ECF 377; that Avenatti told Mr. Janklow that Ms. Daniels "gets confused, that she's impulsive and that it's much cleaner, more efficient for [Ms. Daniels and Avenatti] to deal with all these matters ourselves and he[Avenatti] would communicate to her." *Id.*  Cr. Tr. 140:13-25, 156:22-25, 157:1-3; and that, on each of the occasions when Ms. Daniels contacted Mr. Janklow, Mr. Janklow in turn informed Avenatti, who was Plaintiffs' attorney and agent at the time, and who explicitly instructed Mr. Janklow not to respond to Ms. Daniels or her representatives because he, Avenatti, was "handling it." *See* Adler Aff. ¶¶19, 20-27, 29, 31, 33.

There is no allegation that Defendants obtained any benefit from their purported conduct or retained for themselves any of the monies sent to the Forged Account that Plaintiffs seek to recover from Defendants, or that Defendants could have determined that the Forged Authorization, which bore Ms. Daniels' actual signature, was false.  The Amended Complaint alleges that immediately after February 19, 2018, when JNA and Ms. Daniels each learned that Avenatti had not forwarded to Ms. Daniels the third book advance amount that JNA sent to the Forged Account, Ms. Daniels sent JNA wire instructions for the fourth book payment to be made to a different account, which payment JNA timely made to that different account. Am. Compl.

7

¶¶52-53. There is no allegation or fact indicating that Defendants were in any way working with Avenatti to defraud Plaintiffs; and the evidence on which the jury found Avenatti guilty established that Avenatti defrauded *Defendants*, as well as Ms. Daniels, as part of his scheme to obtain Plaintiff's book advance monies.

## ARGUMENT

### I.   PLAINTIFFS LACK STANDING

Under Rule 12(b)(1), Fed. R. Civ. P., a case is "properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. U.S*., 201 F.3d 110, 113 (2d Cir. 2000).  The Court must determine whether the Complaint "alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017). "An objection to standing is properly made on a Rule 12(b)(1) motion." *Tasini v. N.Y.Times Co*., 184 F. Supp.2d 350, 354-55 (S.D.N.Y. 2002) (internal citation omitted).  The burden is "on 'those who invoke the power of a federal court to demonstrate standing – a personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Nicholas v. Trump*, 433 F. Supp.3d 581, 587 (S.D.N.Y. 2020) (*quoting Already, LLC v. Nike, Inc*., 568 U.S. 85, 90 (2013)).  Plaintiffs must prove by a preponderance of the evidence that they have standing to sue "for each claim [they] seek[s ]to press." *DaimlerChrysler Corp. v. Cuno,* 547 U.S.332, 335 (2006)).

To meet the "irreducible constitutional minimum of standing," *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992), Plaintiffs must establish three elements:  first, that they have suffered an injury in fact; second, "*there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly . . .trace[able] to the **challenged** action of the*

8

*defendant, and not . . .the result [of] the independent action of some third party not before the court;*" and third "it must be likely , as opposed to merely, speculative, that the injury will be redressed by a favorable decision in the case. *Carter v. Healthport Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016) (*quoting Lujan*, 504 U.S. at 560-561) (emphasis in *Carter*).  To satisfy the requisite second element for the causal connection, "a plaintiff must show . . . 'that the injury was caused by the defendant.'"  *Akridge v. Whole Foods Mkt. Grp., Inc.,* 20 Civ. 10900, 2020 WL 955945,*3 (S.D.N.Y. Mar. 30, 2022) (*quoting Thole v. U.S. Bank. N.A.,* 140 S.Ct. 1615, 1618 (2020)).  "Demonstrating that the defendant's allegedly unlawful conduct caused injury to the plaintiff himself is thus generally an essential component of Article III standing." *Mahon v. Ticor Title Ins. Co*., 683 F.3d 59, 62 (2d Cir. 2012).  Where the plaintiff cannot show that the injury was caused by the defendant, standing is not established and the motion to dismiss is granted. *See Plutzer on behalf of Tharanco Grp., Inc. v. Bankers Trust Co. of S.D.,* 1:21-cv-3632, 2022 WL 596356, *5, 6 (S.D.N.Y. Feb. 28, 2022).

Here, Plaintiffs cannot meet the causal connection requirement necessary to establish that Defendants conceivably caused the harm of which Plaintiffs complain.  The facts, which were conclusively determined in Avenatti's trial,  and in which Avenatti did not dispute that he took the money at issue in this case from the Forged Account, establish that Avenatti's conduct, not that of JNA or of Mr. Janklow, was the cause of the loss for which Plaintiffs seek recovery.

"A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based." *Carter,* 822 F.3 at 56. A motion that is based solely on the allegations of the complaint is a facial challenge, on which "both parties can be said to rely solely on the facts as alleged in the plaintiffs' pleading." *Katz v. Donna Karan Co*., L.L.C., 872 F.3d 114, 119 (2d Cir. 2017).  "[A] defendant may also 'make a fact-based Rule 12(b)(1) motion, proffering evidence

beyond the 'plaintiffs' pleading." *Id.* (*quoting Carter*, 822 F.3d at 57).  "In opposition to such a motion, the plaintiffs will need to come forward with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b)(1) motion reveal the existence of factual problems' in the assertion of jurisdiction." *Carter*, 822 F.3d at 57.

On a fact-based challenge, like this one, the Court can take judicial notice of publicly available documents outside the complaint.  Rule 201(b),(c), F.R.E.; *Snowbridge Advisors LLS v. ESO Capital Partners UK LLP*, No. 21-CV-9086, 2022 WL 1093194, *6 (S.D.N.Y. Apr. 11, 2022).  The Court may consider and rely upon "non-conclusory, non-hearsay statements outside the pleadings," *Hess v. Godiva Chocolatier, Inc*., 463 F. Supp.3d 453, 462 (S.D.N.Y. 2020), as well as pleadings and other documents filed in other lawsuits that are matters of public record, including Avenatti's criminal conviction.  *See Rothman v. Gregor,* 220 F.3d 81, 91 (2d Cir. 2000); *Schwartz v. Capital Liquidators, Inc.*, 984 F.2d 53, 43 (2d Cir. 1993).[9]  In addition, the Court may take judicial notice of the documents upon which the Complaint relies, and which it cites and quotes, such as, for example, the Retainer Agreement Defendants are alleged to have breached.  *Cortec Industries, Inc. v. Sum Holding LP,* 949 F.2d 42, 47 (2d Cir. 1991).  "In a breach of contract suit, the contract is integral to the complaint," and is therefore properly considered by the court on a motion to dismiss." *Am. Home Energy Inc. v. AEC Yield Capital, LLC,* 21-CV01337, 2022 WL 595186, *n.2 (E.D.N.Y. Feb. 28, 2022).  *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152-53 (2d Cir. 2002).  While the Court is to accept as true all material facts alleged in the complaint, "the court may resolve any disputed jurisdictional fact by

---

[9] *See also Davis v. City of N.Y*., No. 16 CIV. 3685, 2017 WL 11505252, *4 (E.D.N.Y. May 25, 2017) (taking judicial notice of criminal transcript in associated case); *Lowery v. Home Depot*, No. 13-CV-3957, *1 n.2 (court took judicial notice of criminal "conviction and the documentation establishing it."); *Smith v. City of New York,* No. 12 Civ. 4572, 2013 WL 6158485, *1 (S.D.N.Y. Nov. 25, 2013).

referring to evidence outside of the pleadings." *Borrani v. Nationstar Mortg. LLC,* NO. 20-cv-1444, 2022 WL 837115, *3 (S.D.N.Y. Mar. 21, 2022) (internal quotation omitted).

A.   <u>Avenatti's Criminal Conviction Establishes that He Took the Money Plaintiffs Seek to Recover</u>

Plaintiffs seek to hold Defendants responsible for a payment that, as found in the Avenatti trial, Plaintiffs know Defendants timely made to the Forged Account, for which they were provided the Forged Authorization by Avenatti, who at the time was Plaintiffs' attorney and agent, and had the apparent authority[10] to direct JNA where to make the payment upon his provision of an authorization signed by Ms. Daniels. Avenatti provided JNA with the proper wire and bank account instructions directing JNA where to make the first book advance payment. That JNA timely made the payments to the Forged Account is not in dispute; nor is Mr. Avenatti's admission that in fact he took the money from that account. Though Ms. Daniels has suffered an injury by reason of the fact that she did not receive the third book advance payment at issue, it cannot be disputed that the cause of her injury was Avenatti's admitted scheme – and that Defendants were not the cause of her injury.

The Retainer Agreement itself, Adler Aff. Ex. N, on its face designates Avenatti as Plaintiffs' agent inasmuch as it was entered into by "Stormy Entertainment, Inc. c/o Michael J. Avenatti, Esq.," and explicitly provides that JNA will deduct its agreed compensation and then "promptly remit" to "you," described as "Stormy Entertainment, Inc. c/o Michael J. Avenatti, Esq." the balance of the 'Gross Proceeds." *Id.* There is no allegation that, at any point before JNA transferred the third book payment of $175,000 (minus the JNA commission) to the Forged Account, Plaintiffs informed Defendants that they should stop dealing with Mr. Avenatti as

---

[10] Apparent authority is "the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." Restatement (Third) of Agency, § 2.03 (2006). *See Gomez v. City of New York*, 704 Fed. Appx. 25, 26 (2d Cir. 2017).

Plaintiff's agent.  Nor is there any allegation that the Defendants knew or had reason to know or suspect that the Forged Authorization, which contained Ms. Daniels' signature, was false, or that the Forged Account was not actually one accessible to Ms. Daniels, or that Avenatti took the money from it for himself.

B.     The Facts on Which the Jury Convicted Avenatti Preclude Plaintiffs from Establishing the Causal Connection Requisite to Article III Standing

Following a jury trial before Judge Furman, on February 4, 2022, the jury found Avenatti guilty of wire fraud and aggravated identity theft.  Adler Aff. Ex. A.  The elements of wire fraud "are (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme."  *U.S. v. Greenberg*, 835 F.3d 295, 305 (2d Cir. 2016). In proving the first element of wire fraud (a scheme to defraud), the Government had to prove "that the misrepresentations at issue were material."  *U.S. v. Frenkel*, 682 Fed Appx. 20, 22 (2d Cir. 2017). *See* Adler Aff. Ex. R, ECF 391 at 1735-1739,1748-1749.  A false statement "is material if it has 'a natural tendency to influence, or is capable of influencing, the decision of the decision-making body to which it was addressed." *Id.* (*quoting Neder v. U.S*., 527 U.S. 1, 16 (1999)).  As the jury found, the misrepresentations made by Avenatti to JNA in the Forged Authorization were material in causing JNA to make the third book advance payment to the Forged Account and in causing JNA to reasonably understand that Ms. Daniels wanted JNA to pay the second and third book advance payments to that Forged Account. These misrepresentations by Avenatti, together with his repeated statements to Ms. Daniels (made without JNA's knowledge) that the third payment had not been paid by the publisher (though in fact Avenatti knew it had been timely paid by the publisher), and Avenatti's repeated representations to Mr. Janklow that Mr. Janklow should not respond to Ms. Daniels' communications because he, Avenatti, was dealing with Ms. Daniels concerning the book

payments, are what caused the harm for which Plaintiffs now seek to recover  from Defendants –
the third book payment that Avenatti admittedly took for himself.

As set forth in the jury charge, in convicting Avenatti of wire fraud, the jury found

from in or about July 2018 through in or about 2019, the defendant devised a
scheme to obtain payments owed to Ms. Stephanie Clifford (also known as
Stormy Daniels) under Ms. Clifford's book contract *by falsely representing to Ms.
Clifford's literary agent*, in interstate communications and otherwise, *that Ms.
Clifford had given authority for payments to be sent by wire to an account
controlled by the defendant*, by converting these payments to his own use, and by
falsely representing to Ms. Clifford, in interstate communications and otherwise,
that the payments had not been made.  Adler Aff. Ex. R, ECF 391 at 1734.

With respect to the count for aggravated identity theft, as also set forth in the jury charge,
the jury found that Avenatti knowingly used, transferred or possessed "a means of identification
of another person; that "the defendant used the means of identification in relation to the wire
fraud; and "that the defendant acted without lawful authority." *Id.  See U.S. v. Cwibeker*, No. 12-
CR-0632, 2015 WL 459315,*3 (E.D.N.Y. Feb. 2, 2015).

The facts that were conclusively determined in convicting Avenatti of wire fraud and
aggravated identity theft preclude Plaintiffs now from establishing  the causal connection
necessary for standing (as well as the breach and damages elements requisite to stating their
claims for breach of contract and  breach of fiduciary duty).

A claim for breach of contract requires the plaintiff to allege:  (i) the formation of a
contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to
perform; and (iv) damages "caused to the plaintiff caused by that defendant's breach." *Diesel
Props S.r.l. v. Greystone Business Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011); *Snowbridge
Advisors*, 2022 WL at *5.

Plaintiffs allege that Defendants breached the Retainer Agreement by failing to
"promptly remit to [Plaintiff] the balance of the gross proceeds."  Am. Compl. ¶¶27, 28, 30, 36,

55, 58, 59.[11]  However, the Avenatti criminal case conclusively adjudicated the facts, as admitted

by Avenatti, that JNA *did* promptly remit the third book payment in the amount of $175,000

(less the agreed JNA commission) that Plaintiffs now seek to recover, to the Forged Account,

based on the Forged Authorization; and that Avenatti took the third book advance payment from

that account for his own use.

Accordingly, Plaintiffs cannot plead the breach and damages elements necessary to state

any  claim for breach of contract because the facts that were conclusively determined by the

Avenatti conviction  establish both that Defendants did not breach because JNA did in fact

timely make the payment at issue; and that Plaintiff's damages, in the amount of the third book

payment Plaintiffs seeks to recover in this action, were not caused by Defendants' conduct but by

Avenatti's.  *See Diesel Props,* 631 F.3d 42, 53 (2d Cir. 2011) (" 'Causation is an essential

element of damages in a breach of contract action; as in tort, a plaintiff must prove that the

defendant's breach *directly and proximately caused* his or her damages.' Recovery is not allowed

if the claimed losses are 'the result of other intervening causes.'" (internal citations omitted)

(emphasis in original).  Plaintiffs, therefore, cannot allege the causal connection required for

Article III standing on the breach of contract claim; nor, as shown in Point II below, have

Plaintiffs alleged facts sufficient to state the elements of the contract claim.

Similarly, the claim for breach of fiduciary duty must likewise be dismissed because the

facts adjudicated in the Avenatti trial preclude Plaintiffs from alleging facts sufficient to make

out the causal connection requisite to Article III standing.  Plaintiffs conclusorily allege that Mr.

Janklow breached fiduciary duties and "was the direct cause of damages to [Ms. Daniels] as she

---

[11] Plaintiffs conspicuously failed to attach to the Amended Complaint the Retainer Agreement that  Defendants are alleged to have breached, presumably because Plaintiffs wish to keep from the Court the fact that this agreement was entered into only by "Stormy Entertainment, Inc. c/o Michael Avenatti, EAGAN AVENATTI LLP," and signed by Ms. Daniels (in her actual name, Stephanie Clifford).

has never received all of the monies due and owed under the terms" of [the Publishing Agreement] "and to be paid to her under the terms of the Retainer Agreement with" JNA.  Am. Compl. ¶72.  Aside from the fact that this fiduciary duty claim is self-evidently duplicative of the breach of contract claim, see Point III below, this claim is precluded.  To make out a claim for breach of fiduciary duty, the plaintiff must plead: "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom."  *Spinelli v. Nat'l Football League*, 903 F.3d 185, 207 (2d Cir. 2018); *In re Waste Management Data Breach Litigation*, 21cv6147, 2022 WL 561734, 85 (S.D.N.Y. Feb. 24, 2022).  *See Fed. Nat'l Mortg. Assoc. v. Olympia Mortg. Corp,* No. 04-CV-4971, 2013 WL 417352, *12 ( E.D.N.Y. Jan. 29, 2013) (the damages element of a claim for breach of fiduciary duty are "damages directly caused by the defendant's misconduct.")  Tellingly, the damages Plaintiffs seek are the amount that Avenatti took. The facts adjudicated in the Avenatti trial establish that Mr. Janklow did not knowingly breach any duty to Plaintiff by failing to timely pay any book agreement proceeds and that Plaintiffs' alleged damages were caused by Avenatti and not caused by Mr. Janklow.

The jury convicting Avenatti found that he defrauded Defendants and Ms. Daniels by sending Defendants the Forged Authorization and by repeatedly directing Mr. Janklow not to respond to Ms. Daniels' communications – because, as Avenatti, Plaintiffs' attorney and agent, said, he, Avenatti, was handling the communications with Ms. Daniels concerning money.  In complying with the directions of Avenatti, Plaintiffs' agent and attorney, Mr. Janklow cannot have "knowingly breached," as required for a breach of fiduciary duty claim.  Absent any actionably knowing breach of fiduciary duty by Mr. Janklow, Plaintiffs' damages cannot have resulted from such a knowing breach – such that Plaintiffs cannot establish the requisite standing causal connection for the breach of fiduciary duty claim.

Similarly, the facts found necessary to Avenatti's conviction are what caused Plaintiffs to be unaware of the facts that Avenatti had directed JNA to send the book advance monies to the Forged Account and that Avenatti took that money.  There was no failure to disclose by Mr. Janklow – who obviously could not have been obligated to disclose facts that Avenatti affirmatively hid from him, and which the jury determined Avenatti kept from Mr. Janklow in furtherance of the fraudulent scheme for which Avenatti was convicted.  The failure to disclose that prevented Ms. Daniels from learning, earlier than February 19, 2019, that JNA had timely made the third book payment at issue to the Forged Account, and that Avenatti had taken it, was that of Avenatti who, as the jury found, repeatedly told Ms. Daniels that the third book payment had not been made by the publisher and who instructed Mr. Janklow not to communicate with Ms. Daniels about the book payments.  There are no allegations that JNA knew, or had reason to know, of Avenatti's fraudulent conduct.[12]  Again, Plaintiffs have offered no facts to support any causal connection, sufficient for standing, linking the harm they allege to the conduct of either Defendant.

Avenatti is barred from relitigating these issues which were determined adversely to him. *See Gelb v. Royal Global Ins. Co.,* 798 F.2d 38, 43-33 (2d Cir. 1986); *S.E.C. v. Penn,* 225 F. Supp. 2d 225, 233 (S.D.N.Y. 2016) ("[A] conviction – whether based on a trail or a guilty pleas – is conclusive proof of the underlying facts upon which it rests and the defendants is estopped

---

[12] In the initial complaint, Plaintiffs included a third claim for fraudulent concealment, alleging that Defendants "concealed that they were redirecting [Ms. Daniels'] monies to Avenatti without her knowledge or consent in violation of the Retainer Agreement and their fiduciary duties." Compl. ¶71. Apparently to avoid  the requirements of Rule 9(b), Fed. R. Civ. P., Plaintiffs  dropped this fraudulent concealment claim in the Amended Complaint. However, instead, in the Amended Complaint, Plaintiffs purport to recast the identical conduct as a breach of fiduciary duty. *See* Am. Compl. ¶¶37-38, 43 ("Mr. Janklow failed to make the required truthful and complete disclosure to Ms. Clifford that they had diverted her monies to Michael Avenatti in breach of the Retainer Agreement and the trust and confidence placed in them by Ms. Clifford.") Plaintiffs' effort is unavailing since Rule 9(b) applies to claims for breach of fiduciary duty that are "rooted in fraud," even when as here, the claim is not labelled as fraud,  the breach of fiduciary duty claim independently fails because it fails to plead, with the requisite specificity, all of the elements of fraud, including scienter. *King Cty. Wash. v. IKB Deutsche Industriebank A.G.*, 863 F. Supp. 2d 288, 311-312 (S.D.N.Y. 2012), *rev'd in part on other grounds*, No. 09 Civ. 8387, 2012 WL 11896326. *1 (S.D.N.Y. Sept. 28, 2012). *See* Point VII(B) below.

from litigating those facts in any future proceeding.")  Since "[d]emonstrating that the defendant's allegedly unlawful conduct caused injury to the plaintiff himself is . . . generally an essential component of Article III standing," *Chowdhury v. Veon Ltd.,* No. 21 CIV 3527, 2022 WL 956271, *83 (S.D.N.Y. Mar. 30, 2022) (*quoting Mahon*, 683 F.3d at 62), and the verdict against Avenatti is conclusive proof of its underlying facts, the cause of Ms. Daniels' harm has already been shown to have been caused by Avenatti – and not by JNA or Mr. Janklow. Because the harm of which Plaintiff complains is not fairly traceable to JNA's or Mr. Janklow's conduct, Plaintiffs cannot make out the causal connection necessary to establish standing. *See, e.g., Chord Assocs., LLC v. Protech,* No. 07-CV-5138, 2011 WL 13302692, *6 (E.D.N.Y. Mar. 30, 2011).

## II.     PLAINTIFFS' CLAIMS ARE INSUFFICIENT UNDER RULE12(b)(6)

To survive a motion to dismiss made pursuant to Rule 12(b)(6), Fed. R. Civ. P., "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombley,* 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal, id.*  A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 550; and the plaintiff must allege facts that "nudge [its] claim [ ] across the line from conceivable to plausible." *Id.* at 570. This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations:  the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

Although the Court must accept as true the factual allegations in the complaint, the Court is not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Hennenman*, 517 F.3d 140, 149 (2d Cir. 2008). *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted) (*quoting Ashcroft*, 556 U.S. at 678)). "[C]onclusory allegations are not entitled to the assumption of truth." *Francis v. Kings Manor, Inc*., 992 F.3d 67, 72 (2d Cir. 2021)(en banc).

In adjudicating this motion, "the Court may consider documents that are referenced in the complaint, documents that the plaintiffs relied on in bringing suits and that are either in the plaintiffs' possession or that the plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken." *Rice v. Intercept Pharmaceuticals, Inc*., No. 21-cv-0036, 2022 WL 8837114, *6 (S.D.N.Y.2022) (internal citation omitted). The Court may also consider "facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Coggins v. County of Nassau*, 988 F. Supp.2d 231, 242 (E.D.N.Y.2013), *aff'd in part, sub nom. Coggins v. Buonora*, 776 F.3d 108 (2d Cir. 2015), *cert. den*., 125 S. Ct. 2335 (2015). "If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, controls, and the court need not accept the allegations in the complaint as true." *TufAmerican, Inc. v. Diamond,* 968 F. Supp.2d 588, 592 (S.D.N.Y. 2013); *see Am. Home Energy*, 2022 WL 595186, *5.

A.  <u>The Claim for Breach of Contract Fails because Plaintiffs Have Not Alleged Facts Sufficient to Show that Defendants Breached or That Plaintiffs' Damages were the Result of Defendants' Actions</u>

Under New York law, which governs the Retainer Agreement, to make out a breach of contract claim the Plaintiffs must allege: (1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to [defendant's] breach." *American Home Energy*, 2022 WL 595186, *10.  Here, Plaintiffs allege that Defendants breached the Retainer Agreement by failing to "promptly remit to " 'Plaintiff the balance of the Gross Proceeds' from the Third Payment," Am. Compl.¶¶ 36, 58, 59, which balance is, as Plaintiffs allege, the third book payment amount that Avenatti took after JNA timely transferred that amount to the Forged Account.[13]  The damages Plaintiffs seek for this claim are $175,000, which is the amount of money of the third book payment, but includes the amount of the commission that JNA, pursuant to the Retainer Agreement, deducted before it wired the third book advance payment to the Forged Account. Am. Compl., Demand for Relief (a).

As discussed in Point I above, and as Plaintiffs have long been aware, Defendants did not breach the Retainer Agreement: they timely made the payment of the book advance amounts to the  Forged Account for which Avenatti provided the Forged Authorization.  No facts are alleged which indicate that JNA knew the signature was forged or indicate that Ms. Daniels, as the principal, had directed JNA not to deal with, or accept instructions from, her then-attorney and agent, Avenatti, or that Plaintiffs had revoked Avenatti's authority to represent them, and act on their behalf, at the time JNA made the third book payment at issue.

The breach of contract claim fails because it does not allege facts, as opposed to legal

---

[13] The Court may take judicial notice of the Retainer Agreement, Adler Aff. Ex. N, as it is obviously integral to the complaint and Plaintiffs rely on it and quote it in the complaint.  *See American Home Energy,* 2022 WL 595186 n.2 ("In a breach of contract suit, the contract is integral to the complaint."); *see also Glob. Network Commc'ns, Inc. v. City of N.Y.,* 458 F.3d 150, 157 (2d Cir. 2006) ("in most instances where a document is purportedly integral to a complaint, 'the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason – usually because the document, read in its entirely, would undermine the legitimacy of the plaintiff's claim – was not attached to the complaint.")

conclusions, reflecting either that Defendants breached the Retainer Agreement or that the damages Plaintiffs seek to recover were directly and proximately caused by any breach  by Defendants.  Plaintiffs' damages were the result of Avenatti's fraud.  "Causation is an essential element of damages in a breach of contract action; and, as in tort, a plaintiff must prove that a defendant's breach *directly and proximately caused* his or her damages."  *Nat'l Market Share, Inc. v. Sterling Nat. Bank,* 392 F.3d 520, 525 (2d Cir. 2004).  *See Utica Mutual Ins. Co. v. Munich Reins. American, Inc.,* 7 F.4d 50, 63 (2d Cir. 2021) (that an intervening cause broke the chain of causation of damages in a plaintiff's breach of contract claim is not an affirmative defense "because the intervening cause challenge [is] 'an integral part' of the causation element of the plaintiff's breach of contract claim.") (*quoting Nat'l Market Share*). Damages for breach of contract "may be so remote as not to be directly traceable to the breach, or they may be the result of other intervening causes, and then they cannot be allowed."  *Nat'l Market Share*, 392 F. 3d at 526 (internal quotation omitted).  Here, in addition to the absence of facts showing that Defendants breached, because Plaintiff does not allege facts (as opposed to conclusory statements) showing that Defendants' purported breach was the cause of the Plaintiff's damages, the breach of contract claim should be dismissed. *See, e.g., Variblend Dual Dispensing Systems LLC v. Crystal Int'l Grp. Inc*., 18 Civ. 10758, 2021 WL 1198834, *3 (S.D.N.Y. Mar. 30, 2021).

B.    Plaintiffs Fail to State A Claim for Breach of Fiduciary Duty

To make out a claim for breach of fiduciary duty, Plaintiffs must establish "'(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom.'" *Dondero v. Chopra & Nocero LLP*, 21-1487-cv, 2022 WL 320967, *3 (2d Cir. Feb. 3, 2022) (internal citation omitted)). *See Fed. Nat'l Mortg. Assoc. v. Olympia Mortg. Corp*., No. 04-CV-4971, 2013 WL 417352, * 12 (E.D.N.Y. Jan. 29, 2013) (to state breach of fiduciary duty

claim, damages must be "directly caused by the defendant's misconduct.")  Here, for the same reasons as discussed in Point I, Plaintiffs have not alleged that any facts showing that that Mr. Janklow breached any fiduciary duty to Ms. Daniels – much less that Mr. Janklow's purported breach of such a duty was "knowing."  Nor have Plaintiffs alleged any facts which show that the damages they plead – Ms. Daniels' failure to receive the book payment monies Avenatti took – were directly caused by Mr. Janklow (the only defendant against whom the breach of fiduciary duty claim is pleaded).

The Amended Complaint alleges that the identical conduct caused both the breach of fiduciary duty and the breach of contract.  For the breach of fiduciary duty claim, Plaintiffs allege that Mr. Janklow was obligated to "remit the monies to [Ms. Daniels] without interference, delay, or delivery to third parties and strangers to the contractual agreements," Am. Compl. ¶69; that "without authorization by Ms. Clifford, Mr. Janklow "diverted . . . to Michael Avenatti [the third book advance payment] in breach of the Retainer Agreement and the trust and confidence placed in Lucas Janklow by Ms. Clifford.," *id.* ¶55; and that Mr. Janklow "knowingly concealed that he was diverting monies to Michael Avenatti without her knowledge or consent in violation of his fiduciary duties." *Id.*¶70.  The damages "directly" caused to Ms. Daniels as a result of Mr. Janklow's supposed fiduciary breach were, allegedly, that Ms. Daniels "has never received all of the [book payment] monies due and owed to [Ms. Daniels] under the terms of the [Publishing Agreement] and . . . .to be paid to her under the terms of the Retainer Agreement." *Id.* ¶72.  Plaintiffs make the same  allegations for the breach of contact claim: that "Defendants breached the contract by failing to promptly remit to Plaintiff the balance of the Gross Proceeds to her and instead redirected the amounts to a third-party, Michael Avenatti, without [Ms. Daniels'] knowledge or consent." *Id.*¶58.  As discussed above, since Avenatti was Plaintiff's

attorney and agent, and the Retainer Agreement itself provided that payments were to be made to Stormy Entertainment, Inc. "c/o" Avenatti, Mr. Janklow did not breach any fiduciary duty by directing the payment at issue to the Forged Account, pursuant to the Forged Authorization (which bore Ms. Daniels' signature) provided by Plaintiffs' agent and attorney.  Contrary to the conclusory language in the breach of fiduciary duty allegation in Paragraph 63 of the Amended Complaint, Avenatti was neither a third party nor a stranger to the Retainer Agreement – he was named in it as Plaintiffs' designated agent and had apparent authority, at the least, to forward wire instructions with Ms. Daniels' signature to JNA.  JNA had no reason to doubt the legitimacy of the Forged Authorization and none is alleged. The preceding bank wire instructions that Avenatti had forwarded to JNA for the first book advance payment had not been fraudulent. *See* Am. Compl. ¶25.  No facts are alleged which remotely suggest that Mr. Janklow knowingly breached any fiduciary duty by "concealing" from Ms. Daniels, as Plaintiffs conclusorily allege, Am. Compl. ¶70, that JNA had sent the second and third book advance payments to the Forged Account or that Mr. Janklow knew he had "divert[ed] monies" to Avenatti for Avenatti's personal use.  Nor are any facts alleged indicating that Mr. Janklow had any reason to ignore Avenatti's directions that Mr. Janklow should not respond to inquiries from Ms. Daniels because he, Avenatti, was dealing with Ms. Daniels on this.

Prevailing on the wire fraud charge required the Government to prove beyond a reasonable doubt that Avenatti's misrepresentations were material in that they had "a natural tendency to influence, or [were] capable of influencing the decision of the decision-making body to which [they] were addressed," *Neder v. U.S.*, 527 U.S. at 16. See Adler Aff. Ex. R, ECF 391 at 1736-1737.  Because Avenatti's  material misrepresentations were made to JNA and Mr. Janklow, who were the decisionmakers to whom Avenatti's Forged Authorization and directions

that Mr. Janklow should not speak to Ms. Daniels were directed, JNA and Mr. Janklow were among those the jury determined were defrauded by Avenatti.  Accordingly, the facts already adjudicated in the Avenatti trial establish that the conduct Plaintiffs allege constitutes Mr. Janklow's breach of fiduciary duty was *not* knowing, because Defendants themselves were defrauded as part of the fraudulent scheme for which the jury convicted Avenatti.  There is no allegation in the Amended Complaint that Defendants had any reason to know that Avenatti had forged the Forged Authorization. Since Plaintiffs have not alleged any facts which reflect that any breach of fiduciary duty by Mr. Janklow, assuming, for purposes of argument only, there were one, was "knowing."

Nor can Plaintiffs show, as required to state a claim for breach of fiduciary duty, that Defendants' alleged breach "was the 'but for' cause of the damage" and/or "that it constituted proximate causation."  *RSL Communications PLC v. Bildirici*, 649 F. Supp.2d 184, 208 (S.D.N.Y. 2009). *See Abbas Corp. Ltd. v. Michael Aziz Oriental Rugs, Inc*., 14 Civ. 6771, 2018 WL 1779380, * 3 (S.D.N.Y. April 3, 2018) ( in claims for breach of fiduciary duty, where the remedy sought is damages to compensate for claimants' loss, "the usual damages-causation rule for tort and contract breach cases is appropriate," which requires showing "cause in fact" or "but-for causation" and "proximate causation.").  No facts are alleged in the Amended Complaint which show that Ms. Daniels' alleged harm – that she did not receive the book payment at issue– was directly and proximately caused by Defendants.  Plaintiffs' conclusory allegation that Defendants' breach of fiduciary duty "was the direct cause of damages to Plaintiff as she has never received all of the monies due and owed" under the Publishing Agreement as "required by the Retainer Agreement between the parties," Am. Compl. ¶72, is nothing more than a naked

conclusion, which the Court need not credit – and is affirmatively contradicted by the findings

made by the jury in convicting Avenatti.

### III.  INDEPENDENTLY, THE CLAIM FOR BREACH OF FIDUCIARY DUTY CLAIM MUST BE DISMISSED BECAUSE IT IS DUPLICATIVE

Where, as here, "'a fiduciary duty is based upon a comprehensive written contract

between the parties, a claim for breach of fiduciary duty is duplicative of a claim for breach of

contract' and must be dismissed." *Logfret v. Gerber Finance, Inc*., 20 Civ. 7142, 2021 WL

4135151, * 10 (S.D.N.Y. Sept. 10, 2021) (internal quotation omitted).[14]  Because the breach of

fiduciary duty claim is premised on the same facts, conduct and seeks the same damages as the

breach of contract claim, it must be dismissed.  *Id**. See Spartan Capital Secs., LLC v. Sports

Field Holdings, Inc*., 20 Civ. 4210, 2021 WL 665031, * 2 (S.D.N.Y. Feb. 19, 2021) (" '[a]

breach of fiduciary duty claim is duplicative when it is based on allegations of fiduciary

wrongdoing that are expressly raised in plaintiff's breach of contract claim.' ") (internal citation

omitted).       Similarly, "a tort claim cannot be sustained if it 'does no more than assert

violations of a duty which is identical to and indivisible from the contract obligations which have

allegedly been breached.' . . . .In other words, ' a breach of contract will not give rise to a tort

claim unless a legal duty independent of the contract itself has been violated.' "  *In re Allianz

Global Investors,* 20 Civ. 5615, 2021 WL 4481215, * 20 (S.D.N.Y. Sept. 30, 2021) (internal

citations omitted). "Under New York law, claims of fraud and breach of fiduciary duty that

merely duplicate contract claims must be dismissed." *Id*. *22 (internal citations omitted).

At most, the amended complaint alleges that Mr. Janklow violated the duties he

purported owed to Ms. Daniels pursuant to the Retainer Agreement – which is insufficient to

---

[14] See *The Najjar Group, LLC. V. West 56th Hotel LLC*, No. 14-CV-7120, 2017 WL 819487, *4 (S.D.N.Y. Mar. 1, 2017) (" 'Where a fiduciary duty is based upon a comprehensive written contract between the parties, a claim for breach of fiduciary duty is duplicative of a claim for breach of contract.") (internal citation omitted); *Celle v. Barclays Bank P.L.C.* 48 A.D.3d 301, 302, 851 N.Y.S.2d 500, 501 (1st Dept. 2008).

state a claim for breach of fiduciary duty. *Barbagallo v. Marcum LLP*, No. 11-CV-1358, 2012 WL 1664238, **9-10 (E.D.N.Y. May 11, 2012).

## IV.   PLAINTIFFS' ALLEGATION OF ADDITIONAL "ECONOMIC LOSS" AND "EMOTIONAL DISTRESS DAMAGES" LIKEWISE COMPELL DISMISSAL OF THE CLAIM FOR BREACH OF FIDUCIARY DUTY

Plaintiffs also allege, with respect to the claim for breach of fiduciary duty, that additionally  Ms. Daniels "is entitled to damages in the form of economic loss and emotional distress all in excess of" $75,000," and that "Plaintiffs further seeks an award of punitive or exemplary damages against" Mr. Janklow. Am. Compl. ¶73.  These damage allegations do not salvage the breach of fiduciary duty claim.  First, economic loss damages are precluded under the economic loss doctrine which bars a tort claim, such as the breach of fiduciary duty claim here, "for purely economic losses arising from a breach of contract." *In re Waste Management Data Breach Litigation*, 21 cv6147, 2022 WL 561734 n. 1 (S.D.N.Y. Feb. 24, 2022).  In addition, where, as here, the injury and manner in which the injury occurred are the same as that alleged for breach of contract, the economic loss doctrine bars the breach of fiduciary duty claim. *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Assoc.,* 439 F.Supp.3d 275, 283(S.D.N.Y. 2020) (collecting cases).

Second,  damages for "emotional distress" must be alleged with the specificity required by Rule 9(g), Fed. R. Civ. P.  Damages for emotional distress are "special damages," subject to the pleading standard of Rule 9(g).  C. Wright and A. Miller, 5A Fed. Practice & Procedure §1312 (4th ed.) (April 2022 update).  *See Medcalf v. Walsh*, 938 F. Supp.2d 478, 487-88 (S.D.N.Y. 2013).  Plaintiffs' allegation for emotional distress damages in excess of $75,000 and an unspecified amount of exemplary damages, does not meet this standard.  "A general monetary allegation stated in round numbers is generally not considered to reflect the specific damages

required of special damages." *Guidehouse LLP v. Shah,* 19-cv-09479, 2022 WL 769209, * 2

(S.D.N.Y. Feb. 28, 2022) (internal quotation omitted).  As to the punitive damages claim, such a

claim "requires fraud directed at the general public . . . ."  *Tradeshift, Inc. v. Smucker Services*

*Co.,* 20-cv-3661, 2021 WL 4463109, *9 (S.D.N.Y. Sept. 29, 2021).  The Amended Complaint

does not contain allegations of fraud, much less any directed at the general public.

> **V.      PLAINTIFFS LACK THE CAPACITY TO SUE**

A corporation's capacity to "sue or be sued" is determined by the "law of the state under

which it was organized."  Rule 17(b), Fed. R. Civ. P.  Since Plaintiff Stormy Entertainment, Inc.

is a California corporation, its capacity to sue is determined under California law.  The corporate

status of Stormy Entertainment, Inc. was suspended for failure to pay taxes twice, most recently

in 2016.  Adler Aff. Ex. K. According to public record documents maintained by the California

Secretary of State, the only officer or shareholder of Stormy Entertainment, Inc. is Ms. Clifford.

*Id.*  Documents issued by the California Franchise Tax Board and the Office of the California

Secretary of State, of which the Court may take judicial notice, show that its corporate status was

suspended in December 2016 for "FTB/SOS."  *Id.*

"According to the California Franchise Tax Board website, 'a corporation that is

"FTB suspended" has been suspended for failure to file a tax return or failure to pay taxes,

penalties, fees, or interest.' 'My business is suspended,' State of California Franchise Tax

Board, https://www.ftb.ca.gov/help/business/my-business-is-suspended.html#Why-is-my-

business-suspended (last visited June 1, 2021)."  *FFM Mushrooms Inc. v. Rain Forest Produce*

*Inc.,* No. 20-cv-08201. 2021 WL 2942773 n.3 (N.D. Cal. June 3, 2021).   Under California

Revenue & Taxation Code § 23301, a "corporation may not prosecute or defend an action . . .

while its corporate rights are suspended for failure to pay taxes."  *Al Aqueelah Internat'l Real*

*Estate v. DACA Castaic, LLC,* No. CV-21-2141, 2021 WL 4352330, *2 (C.D. Cal. Aug. 2, 2021)

(*quoting Reed v. Norman*, 48 Cal. 2d 338, 342 (1957)).  *See 621 Two LLC v. Leggett &* Platt,

Inc., No. CV 20-4883m, 2021 WL 4355450,*3 (C.D.Cal. Jul. 9. 2021).  A suspended California

corporation may not sue in this Court. *Engel v. Hawkins*, No. 96 CIV. 1690, 1996 WL 719607,*2

(S.D.N.Y. Dec. 13, 1996).[15]

      While only Stormy Entertainment, Inc. is party to the Retainer Agreement on which

Plaintiffs base their claims for breach of contract and of fiduciary duty, Ms. Daniels, who is the

other plaintiff in this case and who signed the Retainer Agreement, is the sole shareholder and

officer of Stormy Entertainment, and is, arguably, a third-party beneficiary of the Retainer

Agreement.  However, even as a third-party beneficiary of the Retainer Agreement, "a person

standing in close relation to the suspended corporation . . . [like the sole owner and officer of the

suspended corporation] cannot sue to enforce the agreement because doing so would be contrary

to Section 23301 [of the California Rev. & Tax Code]." *Beltran v. Capitol Records*, No. 12-cv-

102, 2013 WL 968248, * 3-4 (N.D. Cal. Mar. 12, 2013).  Accordingly, Ms. Daniels, as the sole

shareholder and officer of the Stormy Entertainment, Inc., and even as the possible third-party

beneficiary of the Retainer Agreement, cannot proceed on her own behalf in the instant action

given the suspended status of Stormy Entertainment, Inc. Otherwise, Ms. Daniels "would obtain

the benefits of the corporate form without its burdens," and while "using the corporate entity to

contract," would impermissibly "retain the right to sue as an individual, third party beneficiary

even when the corporation could not on account of its failure to comply with its corporate

obligations and tax liabilities." *Id.* *4.  Since each of the two Plaintiffs lacks the capacity to sue,

this case must be dismissed. *Id.*

---

[15] In addition, "it is well established that, under § 23301, "a corporation's filing of a complaint at a time when the corporation's powers, rights, and privileges have been suspended does not operate to toll the running of the statute of limitations," and that, "[i]f the statute runs prior to revival, the action is time barred."  *621 Two LLC, id.* (quoting *V & P Trading Co. v. United Charter, LLC*, 212 Cal. App. 4th 126, 132 (2012)).

## VI.   PLAINTIFF'S FIDUCIARY BREACH CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS

Under New York's borrowing statute, when a nonresident plaintiff sues upon a cause of action that arose outside of New York, the claim must be timely under both the New York statute of limitations and the statute of limitations of the jurisdiction where the cause of action accrued. *Berkshire Bank v. Lloyds Banking Group PLC*, 2022 WL 569819, * 4 (2d Cir. Feb. 25, 2022). *See* CPLR §202. In a diversity case, like this one, state law governs not only the limitations period but the commencement of the limitations period. *Cantor Fitzgerald Inc. v. Lutnick*, 313 F.3d 704 (2d Cir. 2002). New York follows "the traditional definition of accrual —a cause of action accrues at the time and in the place of the injury." *Global Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 693 N.Y.S.2d 479, 715 N.E.2d 482, 485 (1999). Where, as here, the "injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss." *Id.  See Muto v. CBS Corp.*, 668 F.3d 53, 60 (2d Cir. 2012). "If the injured party is a corporation, then the place of residence for purposes of [the borrowing statute] is traditionally the state of incorporation or the corporation's principal place of business. *Commerzbank AG v. Bank of New York Mellon*, 15 Civ. 10029, 2018 WL 1157278, *2 (S.D.N.Y. Mar. 21, 2017). Tort claims, such as those for breach of fiduciary duty and fraud, also accrue where "the economic impact is felt." *Posner v. Merrill Lynch, Perce, Fenner & Smith, Inc*., 469 F. Supp. 972, 978 (S.D.N.Y. 1979).

Because  Ms. Daniels is a citizen of Louisiana, her fiduciary breach claim accrued  there and must be timely Louisiana law as well as that of New York.  In Louisiana,  the limitations period for a claim for breach of fiduciary duty is ten years if the claim arises from a specific provision in the parties' agreement and one year if it is a "delictual claim," which arises "'from

the violation of a general duty.'"  *Babin v. Quality Energy Services, Inc*., 877 F.3d 621, 626 (5th

Cir. 2017) (internal citations omitted).[16]

  In view of the allegations that the fiduciary duty claim is premised on Mr. Janklow's

purported failure "to properly account for all monies received by [JNA] for [Ms. Daniels']

literary efforts and remit the monies to [Ms. Daniels] without interference, delay or delivery to

third parties and strangers to the contractual agreements," Am. Compl. ¶69; Mr. Janklow's

purported failure "to disclose material information," *id.* ¶67; and Mr. Janklow's  purported lack

of response to Ms. Daniels' inquiries, which Plaintiffs allege is a breach of "the most

fundamental obligation between agent and principal," *id*. ¶71, this claim pleads delictual

breaches, arising from the general duties of an agent – which Plaintiffs were therefore obligated

to bring within one year of when they became aware of the breach. *Babin, id*; *Young v. Adolph*,

821 So.2d 101, 106 (La. App. 2002).  Since a claim for breach of fiduciary duty accrues on the

date the plaintiff suffers injury, the fiduciary breach claim accrued on February 19, 2019, when

JNA sent Ms. Daniels the Forged Authorization, the documents evidencing the wire transfers and

a summary of when and to which account JNA made the book advance payments.  Under the one

year Louisiana limitations period, Plaintiffs had to file their breach of fiduciary claim no later

than by February 19, 2020.  However, because Plaintiffs untimely commenced the instant action

almost two years later, on February 15, 2022. ECF No. 1,[17] under the New York borrowing

---

[16] To the extent that Plaintiffs' breach of fiduciary duty claim is contractual, in that it alleges "Defendants failed to remit the monies directly to Plaintiff," then while the ten year Louisiana limitations period might arguably apply to it, the claim is self-evidently duplicative of the breach of contract claim, and must be dismissed on that ground.

[17] The California statute of limitations for breach of fiduciary duty is either three years, "where the gravamen of the claim is deceit," or four years under California Code of Civil Procedure section 343 – unless the claim amounts to a claim of professional negligence, in which case the limitations period is two years. *Am. Master Lease LLC. v. Idanta Partners, LTD.,* 225 Cal. App. 4th 1451, 1479 (Ct. App. 2d Dist. 2014) (internal citations omitted).  Accordingly, measured from February 19, 2019, if considered a claim for professional negligence, then Plaintiff's breach of fiduciary duty claim is also untimely under California law.

statute, the claim for breach of fiduciary duty must be dismissed because it was not brought

within one year.

**VII.    THE INDIVIDUAL DEFENDANT MUST BE DISMISSED**

A.    The Claim for Breach of Contract Against Mr. Janklow Must be Dismissed

The Amended Complaint does not have a single allegation suggesting that any conduct

engaged in by Mr. Janklow, including his execution of the Publishing Agreement and the

Retainer Agreement, was undertaken other than during the discharge of his job as a literary agent

at JNA, or other than within the scope of his employment.  Where there are no facts alleging an

alter ego theory in a complaint seeking to hold an individual liable for a breach of contract

entered into by the entity for which that individual works or of which he is an officer, the

contract claim against the individual is properly dismissed. *See Ball v. New York City Council*,

17-CV-4828, 2018 WL 4625625, 5 (S.D.N.Y. Sept. 26, 2018); *Murtha v. Yonkers Child Care

Ass'n, Inc.,* 45 N.Y.2d 913, 915 (N.Y. 1978).  Here, dismissal is appropriate because there is no

allegation that Mr. Janklow personally profited from the purported breach of contract, *see IMG

Fragrance Brands, LLC v. Houbigant*, 679 F. Supp.2d 395, 407 (S.D.N.Y. 2009), nor any

allegations to support veil-piercing on the contract claim. *See Alkholi v. Macklowe*, 17 Civ. 16,

2017 WL 6804076, *4 (S.D.N.Y. Dec. 22, 2017).

Under New York law which explicitly governs the Retainer Agreement, "'an agent who

signs an agreement on behalf of a disclosed principal will not be individually bound to the terms

of the agreement ' unless there is clear and explicit evidence of the agent's intention to substitute

---

Under New York law, a breach of fiduciary duty claim, like Plaintiffs', which seeks money damages only, is
subject to a three year statute of limitations, *Murphy v. Morlitz*, 751 Fed. Appx. 28, 29 (2d Cir. 2018); *IDT Corp. v.
Morgan Stanley Dean Witter & Co*., 12 N.Y.3d 132, 139 (2009); and accrues "as soon as the claim becomes
enforceable, " that is, when all elements of the tort, including damages if damage is an essential element of the
claim, can be truthfully alleged.  *Murphy*, id. Assuming Ms. Daniels did not know that Avenatti had damaged her
until February 19, 2019, her breach of fiduciary duty claim was arguably timely under New York law.

or superadd his personal liability for, or to, that of his principal." *EQT Infrastructure LTD v.*

*Smith*, 861 F.Supp.2d 220, 232 (S.D.N.Y. 2012) (internal citation omitted)).  The most obvious

indicator of the signatory's intent is the signature's form.  *Israel v. Chabra,* 537 F.3d 86, 97 (2d

Cir.2008).  " '[W]here individual responsibility is demanded the nearly universal practice is that

the officer signs twice—once as an officer and again as an individual.' "  *EQT, id.* (*quoting*

*Israel*, 537 F.3d at 97). Here, Mr. Janklow signed the Retainer Agreement on behalf of JNA

only.[18]

B.    The Claim for Breach of Fiduciary Duty Against Mr. Janklow Must Be Dismissed

      Nor is there any basis for an individual claim of breach of fiduciary duty against Mr.

Janklow.  The absence of damages directly caused by Mr. Janklow requires dismissal of the

fiduciary duty claim against him.  *See RSL Communications PLC*, 649 F. Supp.2d at 210 ("the

law holds corporate officers and directors individually liable for breaches of fiduciary duty *only*

*to the extent of damages caused by the breach*.") (emphasis added).  *See* Point II(B).

      Alternatively, if Plaintiffs seek to hold Mr. Janklow responsible for the breach of

fiduciary duty because it sounds in fraud, they have failed to plead the requisite elements of

fraud: there are no facts alleged that Mr. Janklow omitted to share facts with Ms. Daniels with

knowledge of their falsity; that Mr. Janklow had any intent to defraud her; that Ms. Daniels

reasonably relied on Mr. Janklow's purported non-responsiveness to her or that Mr. Janklow's

purported failure to respond to Ms. Daniels' communications caused her damage, or which meet

the pleading requirements of Rule 9(b) (which, presumably, is why Plaintiffs omitted the

---

[18] *See Alkholi,* 2017 WL 680476, *4 (" 'a corporate officer who signs [a contract] on behalf of the corporation is not liable unless he signs as *an individual* (in addition to signing as the corporate representative." (internal citation omitted) (emphasis in original)).

fraudulent concealment claim in the Amended Complaint).[19]  Plaintiffs' allegations that Mr.

Janklow breached his fiduciary obligation to Ms. Daniels by "failing to make truthful and

complete disclosures to her," Am. Compl. ¶67-68, if based on fraud, must be dismissed for

failing to state the elements of fraud and because, as the jury found, Mr. Janklow did not know

that Ms. Daniels had not received the book advance payment(s) at issue when JNA timely made

those  payments to the Forged Account.

        While a corporate officer may be held liable for his own acts of fraud, no such fraud has

been validly alleged against Mr. Janklow.  The elements of a cause of action for fraud based on

omission of a material fact are that the fact was material, knowledge b the defendant of its

falsity, an intent to induce reliance, justifiably reliance by the plaintiff, and damages.  *In re*

*Lifetrade* Litigation, 17-CV-2987, 2022 WL 1448431, *2 (S.D.N.Y. May 9, 2022).  Plaintiffs

have not alleged these elements.  Further, to satisfy Rule 9(b), Plaintiffs must "allege facts that

create not just a plausible inference, but a *strong* inference of scienter." *Id*. (internal citation

omitted) (emphasis in original).  Plaintiffs have not come close to alleging facts that make out

the requisite strong inference of scienter on the part of Mr. Janklow.  Absent any allegation

showing knowledge of falsity by Mr. Janklow or any of any intent by him to deceive Ms.

Daniels, the breach of fiduciary duty claim, to the extent it is premised on fraud, cannot stand.

*Tradeshift, Inc. v. Smucker Svcs. Co*., 20-cv-3661, *6-7 (S.D.N.Y. Sept. 29, 2021).

**VIII.  BECAUSE AVENATTI IS AN INDISPENSABLE PARTY, WHOSE
        PRESENCE DESTROYS DIVERSITY JURISDICTION, THIS ACTION
        MUST BE DISMISSED PURSUANT TO RULE 19, FED. R. CIV. P.**

---

[19] *See Crigger v. Fahnestock & Co*., 443 F.3d 230, 234 (2d Cir. 2006) (setting forth the elements of fraud); *Rubio v. BSDB Management Inc.,* 19-CV-11880, 2021 WL 102651, *5 (S.D.N.Y. Jan. 12, 2021) (Rule 9(b) applies to a breach of fiduciary claim premised on fraudulent conduct).  *See also Romback v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (applicability of Rule 9(b) requirements "is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action.").

Under Rule 19, Fed. R. Civ. P., if a party who is a "necessary" party cannot be joined "
'for jurisdictional or other reasons, the Court must determine whether the party is
"indispensable.' " *Viacom Int'l, Inc. v. Kearny*, 212 F.3d 721, 725 (2d Cir. 2000).  If the party is
"indispensable," Rule 19(b) "commands a district court to dismiss an action where it is
impossible to have the participation of an indispensable party." *Universal Reins. Co. v. St. Paul
Fire & Marine Ins. Co.,* 312 F.3d 82, 87 (2d Cir. 2002).

Here, Avenatti is an indispensable party – he has already been adjudicated responsible for
the conduct that caused the loss Plaintiffs seek to recover from Defendants.  If JNA were held
obligated for this payment to Plaintiffs, JNA would be subject to more than a substantial risk of
incurring double obligations, it would actually have to pay twice – because JNA would have to
to pay the amount it already paid to the Forged Account again.  Plaintiffs' remedy for the book
advance monies they sue to recover from JNA is with Avenatti, who took those monies from the
Forged Account for his personal use.  If this action against JNA proceeds without Avenatti, JNA
is exposed to the risk of a judgment inconsistent with what the jury found in convicting Avenatti,
based on the identical facts as presented to that jury.  The jury has already found Avenatti
responsible for the fraud that directly caused the damages Plaintiffs  seek to recover from
Defendants.  Because Avenatti is a citizen of California, Adler Aff. Ex J, and Plaintiff Stormy
Entertainment, Inc. is also a citizen of California, Am. Compl. ¶4, joinder of Avenatti will
destroy diversity jurisdiction—the only ground for subject matter jurisdiction alleged.
Accordingly, this case should be dismissed pursuant to Rules 19 and 12(b)(7), Fed. R. Civ. P.

Absent Avenatti, Defendants cannot implead him in this case – when the facts of his
responsibility for the damages Plaintiffs seek in this case arise from the same facts as already
adjudicated in the Avenatti criminal trial.  Further, to the extent that JNA seeks not only

indemnity from Avenatti but to sue him for fraud and/or for other claims, if Avenatti cannot be sued in this case, JNA faces the possibility of a statute of limitations expiring before it can sue and/or missing the bar date for filing a claim as a creditor of Avenatti's.  *See Quinn v. City of N.Y.*, 20 Civ. 2666, 2022 WL 874852, *6 (S.D.N.Y. Mar. 24, 2022) ("Rule 19 promotes the efficient and complete resolution of controversies before the courts, and prevents piecemeal litigation, such as the instant action, that could produce contradictory results.")

A.      Avenatti is a "Required Party" under Rule 19(a)

Under Rule 19(a), there are two broad categories of a "required party." Given that Avenatti has already been adjudicated to be directly responsible for the loss Plaintiffs seek to recover from Defendants, he is a "required party" under Rule 19(a)(1)(A) and/or under Rule 19(a)(1)(B)(ii) since his absence in this case will leave Defendants subject to incurring double and otherwise inconsistent obligations because they may have to Plaintiffs the amount that they already paid to the Forged Account.

B.      Avenatti is "Indispensable"

Once a party is determined to be a required party under Rule 19(a), the Court must determine whether the party is "indispensable." *Viacom,* 212 F.3d at 725.[20]  Analysis of the relevant factors warrants dismissal.  The first two factors require the court to consider whether

---

[20]  Under Rule 19(b),  Court to considers the following factors in determining whether a party is "indispensable":

    (1) the extent to which a judgment rendered in the person's absence might prejudice the person or
        the existing parties;
    (2) the extent to which any prejudice could be lessened or avoided by:
        (A)  protective provisions in the judgment;
        (B)  shaping the relief; or
        (C)  other measures;
    (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the
        plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

    (4) whether the plaintiff would have an adequate remedy if the action were dismissed for
        nonjoinder.

any prejudice would result to JNA and Mr. Janklow if the case proceeds without Avenatti.  *See Barton v. Northeast Transport, Inc.*, 21-CV-326, 2022 WL 203593, * 7-8 (S.D.N.Y. Jan. 24, 2022).  Where, as here, the required party, Avenatti, played a 'central role' "in the events that gave rise to the claims, and is the "primary cause of Plaintiffs' damages," and where JNA would likely have to litigate against Avenatti in the event Plaintiffs prevail in this case, allowing the suit to continue without Avenatti "invites a 'substantial' risk of duplicative discovery and 'wasteful litigation,' creating monetary and resource-related prejudice." *Barton, id*.  The adequacy factor too weighs in favor of finding Avenatti indispensable in view of "'the societal interest in the efficient administration of justice and avoidance of multiple litigation.'" *Barton, id*. *8 (*quoting Republic of the Phillipines v. Pimental,* 553 U.S. 851, 870 (2008)).  Finally, it is likely that Plaintiffs have alternative remedies to recover the third book payment at issue, through restitution in the criminal matter and/or as creditors of Avenatti or of his law firm.  Since Avenatti is therefore an indispensable party, whose California citizenship would deprive this Court of diversity jurisdiction, this action should be dismissed. *Barton, id.*

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' Amended Complaint should be dismissed.

Dated:  New York, New York
         May 20, 2022

                                        LANI ADLER PARTNERS LLC


                                        /s/Lani A. Adler_____
                                        Lani A. Adler
                                        275 West 96th Street, Suite 15G
                                        New York, New York  10025
                                        (646) 732-3260
                                        LAdler@LaniAdlerPartners.com

                                        *Attorneys for Plaintiff*