USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/30/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEPHANIE CLIFFORD, *also known as*
Stormy Daniels; and STORMY
ENTERTAINMENT, INC.,

                    Plaintiffs,

        -against-

LUCAS JANKLOW; and JANKLOW
PARTNERS, LLC, *doing business as* Janklow
& Nesbit Associates,

                    Defendants.

1:22-cv-1259 (MKV)

**MEMORANDUM OPINION
AND ORDER GRANTING IN
PART AND DENYING IN
PART MOTION TO DISMISS**

MARY KAY VYSKOCIL, United States District Judge:

Plaintiffs Stephanie Clifford and Stormy Entertainment, Inc. ("Stormy Entertainment")

assert claims in this diversity action for breach of contract and breach of fiduciary duty.

Defendants Lucas Janklow and Janklow Partners, LLC ("JNA") move to dismiss Plaintiffs' claims

pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 12(b)(7), 9, and 19.  For the

reasons outlined below, the motion to dismiss is GRANTED IN PART and DENIED IN PART.

## BACKGROUND[1]

Clifford, better known by her alias "Stormy Daniels," is the President of Stormy

Entertainment.  Amended Complaint ¶¶ 3, 4 [ECF No. 25] ("Am. Compl.").  Clifford is a citizen

of Louisiana and Stormy Entertainment is a California corporation with its principal place of

business in California.  Am. Compl. ¶¶ 3, 4.  Michael Avenatti was Clifford's attorney from

February 2018 until February 2019.  *See* Am. Compl. ¶¶ 28 n.2; 51 n.3.  Lucas Janklow, a New

---

[1] Unless otherwise noted, the following facts are taken from the Amended Complaint and accepted as true for purposes of considering this motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

York resident, is the President of JNA LLC, a literary agency registered in New York.  Am. Compl. ¶¶ 5, 6, 12.[2]

The Complaint alleges that on April 13, 2018, Stormy Entertainment and JNA executed a Retainer Agreement ("Retainer" or "Retainer Agreement").[3]  Am. Compl. ¶ 57.  The Retainer, addressed to "Stormy Entertainment, Inc. c/o Michael J. Avenatti, Esq.," states that JNA would act as the "sole and exclusive representative and agent [of Stormy Entertainment] to negotiate for the disposition throughout the world of any and all [r]ights . . . to the next literary property . . . about the story of Stephanie Clifford . . . to be written by Ms. Clifford."  Affirmation of Lani Adler in Support of Motion to Dismiss ("Adler Aff.") Exhibit N 1 [ECF No.  31-14] ("Retainer").[4]  In return, JNA would receive a fixed percentage commission on payments earned by Clifford from "the disposition of . . . [r]ights" to her book.  Am. Compl. ¶ 17; Retainer 1–2.  The Retainer also contemplates that any publisher payments would be made directly to JNA, which would thereafter "promptly remit the balance of the Gross Proceeds," less its commission, to Stormy Entertainment. Am. Compl. ¶ 17; *see also* Retainer 2.  The Retainer is governed by New York Law.  Retainer 3.

---

[2] The Complaint alleges that no members of JNA are citizens of Louisiana or California.  Am. Compl. ¶ 6.

[3] In an earlier paragraph, Plaintiffs allege that "[Clifford], President of [Stormy Entertainment], and [Janklow], individual" executed the Retainer Agreement.  Am. Compl. ¶ 13.  The Court accepts as true the Complaint's later allegation, as urged in Plaintiffs' Opposition, that "the Retainer Agreement [was] between Stormy Entertainment, Inc. and Janklow and Nesbit," Response in Opposition 10 [ECF No. 34] ("Pl. Opp.") (emphasis omitted), because the Court is obligated to "consider [the] facts in the light most favorable to the plaintiff" when ruling on a motion to dismiss.  *DeMasi v. Benefico*, 567 F. Supp. 2d 449, 452–53 (S.D.N.Y. 2008).

[4] Plaintiffs did not attach a copy of the Retainer Agreement to their Amended Complaint.  However, Defendants provided a copy to the Court.  "On a motion to dismiss, a court may consider documents attached to the complaint as an exhibit or incorporated in it by reference so long as a plaintiff relied on the terms and effect of a document in drafting the complaint."  *Hertz Glob. Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 530 F. Supp. 3d 447, 451 (S.D.N.Y. 2021) (quoting *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002)).  The Court will consider the Retainer Agreement because Plaintiffs refer to its terms throughout the Amended Complaint.

On April 11, 2018, Clifford executed an Author Contract with St. Martin's Press ("SMP") for the right to publish a nonfiction book written by Clifford.[5] Am. Compl. ¶ 19; Adler Aff. Exhibit O [ECF No. 31-15] ("Author Contract").  The Author Contract states that SMP would pay Clifford or her "duly authorized representative" an $800,000 advance in four installments.  Author Contract 2.

SMP paid JNA the first installment of $250,000 upon Clifford's signing of the Author Contract.  Am. Compl. ¶ 24.  JNA transmitted that installment to Clifford (less its fees) without incident on April 11, 2018.  Am. Compl. ¶¶ 24–25.

SMP paid JNA the second installment of $175,000 upon acceptance by SMP of Clifford's final manuscript.  Am. Compl. ¶ 26.  The Complaint alleges that, rather than remitting payment to Clifford directly, JNA diverted the second installment to Avenatti in August 2018, "without authorization or knowledge by" Clifford.  Am. Compl. ¶ 28.  Plaintiffs contend that it was "not [Defendants'] regular practice" to "direct[ payments] to an account of a third-party such as Michael Avenatti," but Janklow "was trying to help [Avenatti] out."  Am. Compl. ¶¶ 29–31.  After a several week delay, Avenatti transmitted the $175,000 payment to Clifford on September 5, 2018.  Am. Compl. ¶ 34.

SMP paid JNA the third installment of $175,000 six months after it accepted Clifford's final manuscript.  Am. Compl. ¶ 35.  Plaintiffs contend that, as with the second installment, JNA diverted the third payment "to the account of Michael Avenatti" without Clifford's knowledge. Am. Compl. ¶ 38.  But this time, Avenatti did not transmit the payment to Clifford.

Clifford and her publicist asked Janklow about the missing payment repeatedly.  Am. Compl. ¶¶ 39, 40, 42, 44, 48, 50.  Janklow initially failed to respond to these inquiries.  Am. Compl.

---

[5] Again, Plaintiffs failed to provide this contract.  Defendants provided a copy, which this Court considers because Plaintiffs "relied on [its] terms . . . in drafting the complaint."  *Hertz*, 530 F. Supp. 3d at 451.

¶¶ 39, 41, 43, 45, 49, 50.  On February 19, 2019, however, Clifford "was finally informed" that JNA had redirected the second and third installments to Avenatti.  Am. Compl. ¶ 51.  That day, Clifford terminated her attorney-client relationship with Avenatti.  Am. Compl. ¶ 51 n.3.  Clifford thereafter directed JNA to transfer the fourth and final installment of $200,000 to an account controlled by Clifford.[6]  Am. Compl. ¶ 52.  JNA complied and wired the fourth installment to that account on February 21, 2019.  Am. Compl. ¶¶ 53, 54.

Although the Complaint does not mention it explicitly, the Court takes judicial notice of the fact that on February 4, 2022, Avenatti was convicted in a jury trial for fraudulent conduct pertaining to the events described in this Complaint.[7]  Adler Aff. Exhibit A 2 [ECF No. 31-1] ("Verdict Form"); Adler Aff. Exhibit I 1–15 [ECF No. 31-9] ("Indictment").  *See* Fed. R. Evid. 201(b); *see also Schwartz v. Cap. Liquidators, Inc.*, 984 F.2d 53, 54 (2d Cir. 1993) (taking judicial notice of the fact that "a jury in a criminal prosecution pursuant to a six-count indictment, found [the plaintiff] guilty on all six counts"); *Hooks v. City of New York*, No. 21-CV-10771 (JGK), 2022 WL 16964010, at *4 (S.D.N.Y. Nov. 16, 2022) ("[C]ourts may take judicial notice of court documents and other public records, including arrest reports, criminal complaints, indictments, and criminal disposition data." (cleaned up)).[8]

---

[6] The Complaint alleges that the final payment was $250,000, but the Author Contract states it was $200,000. *Compare* Am. Compl. ¶ 53, *with* Author Contract 2.  Moreover, $200,000 is the balance remaining on an $800,000 payment after the first three payments of $250,000; $175,000; and $175,000, together totaling $600,000.

[7] The Complaint selectively quotes Janklow's testimony at the trial.  *See* Am. Compl. ¶¶ 29, 31, 49, 71. Plaintiffs continue the selective quotation in their opposition brief.  *See, e.g.*, Pl. Opp. 3–4.

[8] Both parties encourage the Court to consider the criminal trial transcripts from the Avenatti trial.  *See* Memorandum of Law in Support 3–6 [ECF No. 30]; Pl. Opp. 9.  However, "[f]acts adjudicated in a prior case do not meet [the standard for judicial notice under] Rule 201(b)."  *Weisshaus v. Port Auth. of New York & New Jersey*, 814 F. App'x 643, 646 (2d Cir. 2020).  The Court therefore takes judicial notice of these documents "only to determine what statements the public records contained, not to establish the truth of the matters asserted therein."  *Hooks*, 2022 WL 16964010, at *4.

Less than two weeks later, on February 15, 2022, Plaintiffs filed their Complaint in this Court.  Complaint [ECF No. 1].  Plaintiffs later filed an Amended Complaint, asserting two claims. *See* Am. Compl.  First, Plaintiffs contend that JNA breached the Retainer Agreement with Stormy Entertainment "by failing to promptly remit . . . the balance of the Gross Proceeds and instead redirect[ing] the amounts to a third-party, Michael Avenatti." Am. Compl. ¶ 58.  Second, Plaintiffs allege that Janklow breached his fiduciary duty to Clifford by "intentionally ignor[ing] and refus[ing] to communicate" and "knowingly conceal[ing] that he was diverting monies to Michael Avenatti." Am. Compl. ¶ 70.  Plaintiffs seek $175,000 on the first claim and $75,000, in addition to a "further . . . award of punitive or exemplary damages," on the second claim.  Am. Compl. ¶ 73; Demand for Relief.

Defendants moved to dismiss the Amended Complaint.  *See* Motion to Dismiss [ECF No. 28]; Memorandum of Law in Support [ECF No. 30] ("Def. Mem.").[9]  Defendants make three principal arguments in favor of dismissal: (1) Plaintiffs lack standing under Rule 12(b)(1); (2) the Complaint fails to state a claim under Rule 12(b)(6) and Rule 9; and (3) Plaintiffs failed to join a necessary party (Avenatti) under Rule 12(b)(7), whose joinder would destroy diversity jurisdiction.[10]

## **LEGAL STANDARDS**

### I.      **Rule 12(b)(1): Standing**

A district court "properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to adjudicate it,' such as when . . . the plaintiff lacks constitutional standing to bring the action." *Cortlandt St.*

---

[9] Plaintiffs opposed the motion.  *See* Pl. Opp.  Defendants submitted a reply.  *See* Reply Memorandum of Law [ECF No. 38] ("Reply").

[10] The Court has considered all of Defendants' other arguments for dismissal.  The Court concluded that any arguments not explicitly referenced in this Opinion were unnecessary to the resolution of the pending motion.

*Recovery Corp. v. Hellas Telecomms., S.a.r.l*, 790 F.3d 411, 416–17 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).   To satisfy the "'irreducible constitutional minimum' of standing," a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).   The burden is on "those who invoke the power of a federal court to demonstrate standing." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013).

A Rule 12(b)(1) motion may be either facial or fact-based.   *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016).   Where, as here, Defendants lodge a fact-based challenge to standing, the Court may take judicial notice of publicly available documents outside of the complaint in evaluating the motion.   *See id.* at 57; *see also Snowbridge Advisors LLC v. ESO Cap. Partners UK LLP*, No. 21-CV-9086 (JSR), 2022 WL 1093194, at *6 (S.D.N.Y. Apr. 11, 2022).

## II.      Rule 12(b)(6): Failure to State a Claim

To survive a Rule 12(b)(6) motion to dismiss, the Complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   While the Court "must accept as true all of the allegations contained in a complaint," this "tenet . . . is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

The Court may consider "documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or documents either in plaintiffs'

6

possession or of which plaintiffs had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (alterations omitted).

### III.     Rule 12(b)(7): Failure to Join a Necessary Party

Under Rule 12(b)(7), an action must be dismissed for failure to join a required party under Rule 19.  Fed. R. Civ. P. 12(b)(7); *see Fed. Ins. Co. v. SafeNet, Inc.*, 758 F. Supp. 2d 251, 257 (S.D.N.Y. 2010).  Rule 19 establishes a two-step test for determining whether the court must dismiss an action for failure to join an indispensable party.  Fed. R. Civ. P. 19; *see Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000).  First, the court must determine whether an absent party is "necessary" under Rule 19(a).  *See Viacom*, 212 F.3d at 724.  If the absent party is *not* necessary under Rule 19(a), then the court need not decide whether its absence warrants dismissal under Rule 19(b).  *Id.*  If, however, the absentee *is* a required party who cannot be joined for jurisdictional or other reasons, then the court must determine whether the absentee is indispensible under Rule 19(b).  *Id.* at 725.  If the absent party is indispensible, the action should be dismissed.  *Id.*

There is a "generally accepted principle that the court is not limited to the pleadings on a Rule 12(b)(7) motion."  *Fagioli S.p.A. v. Gen. Elec. Co.*, No. 14-CV-7055 AJN, 2015 WL 3540848, at *4 (S.D.N.Y. June 5, 2015); *see American Ins. Co. v. Kartheiser*, No. 17-CV-5545 (JMF), 2018 WL 2388533, at *1 (S.D.N.Y. May 25, 2018).

### <u>ANALYSIS</u>

### I.     Plaintiffs Satisfy Article III Standing

Defendants argue that Plaintiffs lack standing under Rule 12(b)(1) because their damages were directly and proximately caused by Avenatti.  *See* Def. Mem. 8–17.  Therefore, Defendants argue that "Plaintiffs cannot meet the causal connection requirement necessary to establish that Defendants conceivably caused the harm of which Plaintiffs complain."  Def. Mem. 9.

The Second Circuit has instructed that "[t]he requirement that a complaint allege an injury that is fairly traceable to defendants' conduct for purposes of constitutional standing is a *lesser burden* than the requirement that it show proximate cause." *Rothstein v. UBS AG*, 708 F.3d 82, 92 (2d Cir. 2013) (emphasis added) (alterations and quotation marks omitted). To plead standing, "the pleader need only show that allowing her to *raise* her claim in federal court would not move so beyond the court's ken as to usurp the power of the political branches." *Harry v. Total Gas & Power N. America, Inc.*, 889 F.3d 104, 110–11 (2d Cir. 2018) (emphasis in original). Unless an alleged injury "is so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy, . . . the mere fact that it raises a federal question . . . confers power on a federal court to decide that it has no merit, as well as to decide that it has." *Id.* at 111 (citations and alterations omitted). Further, "[w]hether the elements of breach of contract . . . are satisfied . . . *goes to the merits*, *not* to a court's *power to resolve* the controversy." *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 212 (2d Cir. 2020) (emphasis added) (citing *Perry v. Thomas*, 482 U.S. 483, 492 (1987)).

Plaintiffs have satisfied their modest burden here. Plaintiffs allege that they entered into the Retainer Agreement with JNA and that JNA failed to promptly transmit the second and third installments to Plaintiffs as required by the Retainer. Am. Compl. ¶¶ 13, 17, 28, 38. Plaintiffs also allege that Janklow was empowered to act on their behalf, but that instead, Janklow departed from his "regular practice" by directing payments to Avenatti in an effort to "help [him] out," and repeatedly ignored Clifford's inquiries about the missing payments. Am. Compl. ¶¶ 29–32. Accepting these allegations as true, they are sufficient to persuade the Court that Plaintiffs may "*raise* [their] claim[s] in federal court" without "usurp[ing] the power of the political branches." *Harry*, 889 F.3d at 110–11.

Although Defendants "tempt the Court to conflate a merits inquiry with standing" by asserting that causation is lacking, Defendants' contentions are more "properly raised in the context of a motion under Rule 12(b)(6)." *Toretto v. Donnelley Fin. Sols., Inc.*, No. 1:20-CV-2667-GHW, 2021 WL 861138, at *8 (S.D.N.Y. Mar. 5, 2021). Plaintiffs have established standing sufficient to survive Defendants' Rule 12(b)(1) motion. The Court therefore declines to dismiss the Complaint on this ground.

## II. Plaintiffs Plausibly Allege a Breach of Contract Claim Against JNA, But Their Other Claims Fail

### A. *Plaintiffs Plausibly Allege a Breach of Contract Claim Against JNA*

To state a breach of contract claim in New York, Plaintiffs must allege: (1) the existence of a contract; (2) performance under the contract by Plaintiffs; (3) Defendants' failure to perform, and (4) that Plaintiffs suffered damages because of Defendants' breach. *34-06 73, LLC v. Seneca Ins. Co.*, 39 N.Y.3d 44, 52, 198 N.E.3d 1282, 1287, 178 N.Y.S.3d 1, 6 (N.Y. 2022). Defendants attack Plaintiffs' claim with respect to the third and fourth elements, arguing that the Complaint does not allege facts suggesting that Defendants breached the Retainer Agreement and that Plaintiffs' damages were not the result of Defendants' actions. *See* Def. Mem. 18–20.

Plaintiffs concede that JNA paid the second and third installments. Am. Compl. ¶¶ 28, 38. They contend, however, that JNA breached the Retainer Agreement by sending the funds to Avenatti, rather than to Stormy Entertainment.[11] Am. Compl. ¶ 58. The allegations are sufficient to plausibly state a claim at this preliminary stage.

The relevant provision of the Retainer Agreement states that "we shall promptly remit to *you* the balance of the Gross Proceeds." Retainer Agreement 2 (emphasis added). The Complaint

---

[11] The Complaint does not specify whether JNA's payment of the second or third installment (or both) constituted the alleged breach.

alleges that the Retainer Agreement was executed by Stormy Entertainment and JNA.  Am. Compl. ¶¶ 57–58.  Accepting that allegation as true, "you" refers to Stormy Entertainment, meaning that JNA was obligated to remit the funds to the corporation.  Because Plaintiffs allege the funds were diverted to Avenatti instead, they have plausibly alleged a breach of the Retainer Agreement.

Defendants note, and the Court acknowledges, numerous facts undermining this version of events.  First, Defendants point to evidence introduced at the criminal trial regarding *why* JNA redirected the funds to Avenatti.  Def. Mem. 4–5.  However, the Court is not at liberty to entertain, much less accept, the truth of those facts at the motion to dismiss stage.  *See Weisshaus v. Port Auth. of New York & New Jersey*, 814 F. App'x 643, 646 (2d Cir. 2020) ("Facts adjudicated in a prior case do not meet [the standard for judicial notice under] Rule 201(b)."); *Hooks*, 2022 WL 16964010, at \*4 ("[I]f a court takes judicial notice of [court] documents, it does so only to determine what statements the public records contained, not to establish the truth of the matters asserted therein.").

With regard to the fourth element, Defendants argue that Plaintiffs' damages were directly and proximately caused by Avenatti, and not by JNA.  Def. Mem. 17–20.  While such an argument may be appropriate at a later stage of the case, at the pleading stage the Court must accept Plaintiffs' allegations as true.  *See Twombly*, 550 U.S. at 556.  Indeed, it is a hornbook principle that causation questions are "appropriately left to the finder of fact."  *Mexico Infrastructure Fin., LLC v. Corp. of Hamilton*, No. 17-CV-6424 (VSB), 2020 WL 4572679, at \*4 (S.D.N.Y. Aug. 7, 2020); *U.S. Bank Nat. Ass'n v. Bank of America*, N.A., No. 12 CIV. 4873 CM, 2012 WL 6136017, at \*6 n.2 (S.D.N.Y. Dec. 11, 2012) ("[T]he Court need not rule on causation at this time, because it is a question of fact not properly resolved on a motion to dismiss."); *Lola Roberts Beauty Salon, Inc. v. Leading Ins. Grp. Ins. Co.*, 160 A.D.3d 824, 826, 76 N.Y.S.3d 79, 81 (2d Dep't 2018) ("Generally, it is for the trier of fact to determine the issue of proximate cause [and] . . . the issue

of proximate cause may be decided as a matter of law where only one conclusion may be drawn from the established facts." (citation omitted)).  To the extent Defendants suggest that payment to Avenatti was permissible because he was Clifford's lawyer and agent, this argument too improperly raises a question of fact that is not the subject of a motion to dismiss.  Moreover, the Complaint does not clearly allege that Avenatti was *Stormy Entertainment's* lawyer.[12]  *See* Am. Compl. ¶¶ 28 n.2, 51 n.3.  Although the fact that the Retainer was addressed to "Stormy Entertainment, Inc. c/o Michael J. Avenatti, Esq.," may constitute evidence that Avenatti *was* the company's lawyer, "[t]he Court's function on a motion to dismiss is 'not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient.'"  *McKevitt v. Mueller*, 689 F. Supp. 2d 661, 665 (S.D.N.Y. 2010) (quoting *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985)).  Drawing all reasonable inferences in Plaintiffs' favor, the Court concludes that Plaintiffs have plausibly alleged against JNA a claim for breach of the Retainer Agreement.

To the extent that Plaintiffs assert a contract claim against Janklow individually,[13] that claim is dismissed.  "It is well established that officers or agents of a company are not personally liable on a contract if they do not purport to bind themselves individually."  *Georgia Malone & Co. v. Rieder*, 86 A.D.3d 406, 408, 926 N.Y.S.2d 494, 497 (1st Dep't 2011) (citing *Salzman Sign Co. v. Beck*, 10 N.Y.2d 63, 67, 176 N.E.2d 74, 76 (N.Y. 1961)).  The Retainer Agreement includes no such language.  *See Georgia Malone*, 86 A.D.3d at 408, 926 N.Y.S.2d at 497 (noting that an

---

[12] Specifically, the Complaint alleges that Avenatti "represented the Plaintiff" (singular) from February 2018 until "Plaintiff terminated *her* attorney-client relationship" in February 2019.  Am. Compl. ¶¶ 28 n.2, 51 n.3 (emphasis added).

[13] The Complaint states that Plaintiffs "seek judgment against Defendants" for both claims.  Am. Compl. Demand for Relief.  However, Plaintiffs' opposition brief suggests that the contract claim is brought against JNA only, and the fiduciary duty claim is brought against Janklow only.  *See* Pl. Opp. 10–11.  Because "[i]t is well settled that a party may not amend its pleadings in its briefing papers," *Enzo Biochem, Inc. v. Amersham PLC*, 981 F. Supp. 2d 217, 223 (S.D.N.Y. 2013) (citing *Avillan v. Donahoe*, 483 F. App'x 637, 639 (2d Cir. 2012)), the Court treats both claims as brought against both Defendants, as alleged in the Complaint.

officer signs a contract twice, rather than once, as "the general practice when an individual wishes to be personally bound"). The breach of contract claim against Janklow is therefore dismissed.

      B.    *Plaintiffs Do Not Plausibly Allege a Breach of Fiduciary Duty Claim*

      To state a breach of fiduciary duty claim in New York, the Complaint must allege, first and foremost, the existence of a fiduciary relationship. *See Armentano v. Paraco Gas Corp.*, 90 A.D.3d 683, 684, 935 N.Y.S.2d 304, 306 (2d Dep't 2011); *see also PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 497 (S.D.N.Y. 2017). Plaintiffs do not adequately allege the existence of such a relationship with either Janklow personally or with JNA.

      The Complaint asserts that Janklow was "fully authorized and empowered" to "act on [Clifford's] behalf." Am. Compl. ¶ 63. Plaintiffs further contend that Janklow violated his "legal obligations" to Clifford, Am. Compl. ¶ 49, by failing to "properly account for all monies received," Am. Compl. ¶ 69, and by neglecting to make "required truthful and complete disclosures," Am. Compl. ¶¶ 37, 41, 43, 45.

      Plaintiffs' assertion that Janklow owed Clifford a fiduciary duty is without legal or factual basis. *See EBC I, Inc. v. Goldman, Sachs & Co.*, 5 N.Y.3d 11, 22, 832 N.E.2d 26, 32, 799 N.Y.S.2d 170, 176 (N.Y. 2005) (There is a "general rule that fiduciary obligations do not exist between commercial parties operating at arm's length."); *Morgenroth v. Toll Bros.*, 60 A.D.3d 596, 597, 876 N.Y.S.2d 378, 380 (1st Dep't 2009) ("Plaintiffs' argument that defendants owed them a 'fiduciary duty' is without legal or factual basis. The only duty owed by defendants to plaintiffs was a contractual one."). In New York, "[p]urely commercial transactions do not give rise to a fiduciary relationship." *In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 353 (2d Cir. 1992) (citing *Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Publ'g Co.*, 33 A.D.2d 766, 766, 306 N.Y.S.2d 599, 600 (1st Dep't 1969)); *see also Oddo Asset Mgmt. v. Barclays Bank PLC*, 19 N.Y.3d 584, 593, 973 N.E.2d 735, 741, 950 N.Y.S.2d 325, 331 (N.Y. 2012) ("[I]f the parties do not create

their own relationship of higher trust, courts should not ordinarily transport them to the higher realm of relationship and fashion the stricter duty for them." (alterations and citation omitted)); *Faulkner v. Arista Recs. LLC*, 602 F. Supp. 2d 470, 482 (S.D.N.Y. 2009) ("[I]t is well-settled law that[] a conventional business relationship does not create a fiduciary relationship in the absence of additional factors." (cleaned up)); *PetEdge*, 234 F. Supp. 3d at 498 (An "arms-length commercial transaction generally does not give rise to a fiduciary relationship." (citation omitted)). Although Plaintiffs vaguely contend that a "fiduciary relationship existed," Am. Compl. ¶ 69, because Clifford "reposed trust and confidence" in Janklow, Am. Compl. ¶ 64, these conclusory allegations are insufficient to plausibly allege a claim. *See PetEdge*, 234 F. Supp. 3d at 498 (finding allegation that "the relationship between [the parties] was one of trust and confidence as [defendant] was in a superior position, possessed special knowledge, [and] was in a position to exercise influence over [plaintiff]" constituted "nothing more than bare recitations of the legal elements of a fiduciary duty"); *Faulkner*, 602 F. Supp. 2d at 482 ("[C]onclusory allegations that [parties] shared a 'long and enduring relationship of trust and confidence" are insufficient to plead a fiduciary relationship and survive a motion to dismiss." (cleaned up)). This claim is therefore dismissed against both Defendants.

Defendants outline several other arguments in attacking the breach of fiduciary duty claim, including that Plaintiffs' alleged damages are not pled with the specificity required by Rule 9. *See* Fed. R. Civ. P. 9(g); *see also* Def. Mem. 25, 32. Because the Complaint fails to state a claim for breach of fiduciary duty under Rule 12(b)(6), the Court need not address these arguments.

### III.    Avenatti Is Not a Required Party

Finally, Defendants argue that this case must be dismissed under Rule 12(b)(7) for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). Specifically, Defendants contend that Avenatti is a required party under Rule 19 and, since he is a California resident, his joinder would

destroy diversity jurisdiction, requiring dismissal of this case under Rule 19.[14]  *See* Fed. R. Civ. P. 19(a); Def. Mem. 32–35.  Defendants are incorrect.

To satisfy the two-step test of Rule 19, Defendants must first demonstrate that Avenatti is "necessary" under Rule 19(a).  *See Viacom*, 212 F.3d at 724.  If Avenatti *is* necessary under Rule 19(a), then the court must determine whether he is indispensable—and whether the case may proceed in his absence—under Rule 19(b).  *Id.* at 725.  However, if Avenatti is *not* necessary under Rule 19(a), then the court need not address Rule 19(b).  *Id.* at 724.

To satisfy Rule 19(a), Defendants must show either: that (1) "in [Avenatti's] absence, the court cannot accord complete relief among [the] existing parties," Fed. R. Civ. P. 19(a)(1)(A); or (2) Avenatti "claims an interest relating to the subject of the action and is so situated that disposing of the action in [his] absence may . . . impair or impede [his] ability to protect the interest; or . . . leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest," Fed. R. Civ. P. 19(a)(1)(B).

This case does not implicate Rule 19(a)(1)(A) because "complete relief" *can* be achieved without joining Avenatti.  "[T]he term complete relief refers only to relief as between the persons [who are] *already* parties, and not as between a party and the absent person whose joinder is sought."  *Arkwright-Bos. Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 209 (2d Cir. 1985) (emphasis added) (citation omitted).  Here, Plaintiffs only seek damages from Defendants—not from Avenatti.  Am. Compl. Demand for Relief; *see Shtofmakher v. David*, No. 14 CIV. 6934 AT, 2015 WL 5148832, at *7 (S.D.N.Y. Aug. 17, 2015) ("Plaintiff seeks only monetary damages, and Defendants do not explain why the relief sought could not be obtained without the absent parties'

---

[14] Although Avenatti's citizenship is not pled in the Complaint, Defendants contend, and Plaintiffs do not contest, that Avenatti is a California resident.  *See Fagioli*, 2015 WL 3540848, at *4 (court may consider documents outside of the pleadings on a Rule 12(b)(7) motion).

presence."). Defendants do not explain why the relief sought could not be achieved without Avenatti. Similarly, Rule 19(a)(1)(B) is applicable only where the allegedly required party "claims an interest relating to the subject of the action." Defendants provide no evidence that Avenatti has claimed such an interest here. Although Defendants contend that they will be "subject to incurring double and otherwise inconsistent obligations," Def. Mem. 34, the "[d]esire to seek indemnification from a third-party does not make the third-party an indispensable party." *Shtofmakher*, 2015 WL 5148832, at *7 n.9 (alterations and citation omitted).

Avenatti is not a required party under Rule 19(a). Accordingly, the Court need not "decide whether [his] absence warrants dismissal under Rule 19(b)." *Viacom*, 212 F.3d at 724.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is GRANTED IN PART and DENIED IN PART. The breach of contract claim against Janklow is dismissed, as is the breach of fiduciary duty claim against both Defendants. The Clerk of the Court is respectfully requested to terminate docket entry 28.

        **SO ORDERED.**

Date:  **March 30, 2023**                **MARY KAY VYSKOCIL**
        **New York, NY**                **United States District Judge**